DECISION
In this action, the State of Rhode Island[1] and Marjorie R. Yashar, a retired judge of the Rhode Island Traffic Tribunal, dispute the amount of retirement pension to which she is entitled. The State has filed a motion for partial summary judgment, seeking a declaration from this Court that Judge Yashar is entitled, as a matter of law, to a pension equal to only 75% of the salary that she was receiving at the time of her retirement, as opposed to the pension of 100% of her pre-retirement salary that she is currently receiving. The State claims that, under the judicial pension statute at issue, R.I. Gen. Laws § 8-8.2-6(a), her current pension wrongfully reflects credit for time she spent on an unpaid leave of absence which, if properly deducted, leaves her short of the 20 years of judicial service required to secure a full pension under the statute. *Page 2 
Judge Yashar has filed a cross-motion for summary judgment in which she first seeks dismissal of this action on the grounds that the State lacks standing to bring it or, alternatively, that this Court lacks jurisdiction to review a pension decision of the State Court Administrator. As to standing, she argues that neither the Attorney General nor the General Treasurer has suffered any injury-in-fact. As to jurisdiction, she contends that a decision of the State Court Administrator is subject to review only by way of a common law writ of certiorari to the Rhode Island Supreme Court.
Assuming, arguendo, that this Court determines that the State has standing to bring this action and that it has jurisdiction over the State's action for declaratory and equitable relief, Judge Yashar seeks a declaration by this Court that she is entitled, as a matter of law, to the retirement pension that she is currently receiving of 100% of her pre-retirement salary. She claims that under the judicial pension statute in dispute, R.I. Gen. Laws § 8-8.2-6(a), she is entitled to credit for her time in state service, which spans over 20 years, without regard to whether she spent a portion of that time on an unpaid leave of absence. She argues further that the State is barred from seeking to reduce her pension based on principles of contract law and equitable estoppel. She claims that she entered into a settlement agreement with the Commission on Judicial Tenure and Discipline and Chief Judge DeRobbio, by which she agreed to accept a public censure with respect to her pending disciplinary charges, dismiss her appeal of a decision in her mandamus action that denied her request to be returned to paid employment, and retire, in exchange for an alleged promise of the State Court Administrator that she would be entitled to a pension, upon retirement, equal to 100% of her pre-retirement salary. *Page 3 
For the reasons set forth in this Decision, this Court grants the State's motion for partial summary judgment and denies Judge Yashar's cross-motion for summary judgment. This Court finds that the Attorney General has standing to bring this action for declaratory relief on behalf of the public to ensure that public officials receive retirement pensions that are not in excess of those granted by state law. Similarly, the General Treasurer, in his capacity as Chairman of the ERSRI, has standing to bring this action to ensure the legal disbursement of public funds. This Court finds further that there is no jurisdictional hurdle to it entertaining such an action for declaratory and injunctive relief.
This Court declares that, under Rhode Island law, Judge Yashar is entitled not to the 100% pension that she is currently receiving, but to a pension equal to 75% of her pre-retirement salary.[2] While the judicial pension statute, R.I. Gen. Laws 8-8.2-6(a), allowed her to retire at age 65 with a full pension as long as she "served" for 20 years as a judge, this Court finds that the extended unpaid leave of absence that she took prior to retiring at age 65 — being time during which she neither worked as a judge nor received pay — cannot be credited toward her pension as time served under the statute. The State is neither equitably estopped nor barred by precepts of contract law from securing such declaratory relief. Even assuming, without deciding, that state actors promised Judge Yashar a full pension as part of an alleged settlement agreement with her, any such promise is unenforceable, as it contravenes state law. *Page 4 
 I Factual Background[3]
On July 10, 1985, Marjorie R. Yashar was sworn in as an administrative judge of the Administrative Adjudication Division of the Department of Transportation ("AAD").[4] Def.'s Aff. at ¶ 2. On September 1, 1992, the AAD became the Administrative Adjudication Court ("AAC")[5], and Judge Yashar remained a judge of the AAC until it became the Rhode Island Traffic Tribunal ("RITT"), effective July 1, 1999, at which time she became a judge of the RITT.[6] Id.
In August of 2004, Albert E. DeRobbio, Chief Judge of the Rhode Island District Court and the RITT ("Chief Judge DeRobbio"), filed a multiple charge complaint against Judge Yashar with the Commission on Judicial Tenure and Discipline ("the Commission"). This complaint apparently alleged that, on various dates in 2004, she either failed to appear to perform her duties as Magistrate Judge of the RITT or that she arrived late for or left early from such duties. See In re Marjorie R. Yashar,Magistrate Judge for the Rhode Island Traffic Tribunal, C.A. No. 05-271-M.P. (R.I. 2005) (Order) (filed Oct. 5, 2005); App. to Def.'s Aff. at 25-26. On February 7, 2005, during the pendency of that complaint, Judge Yashar requested, by letter through her legal counsel, that Chief Judge DeRobbio place her on temporary medical leave, of undefined duration, *Page 5 
during which time she expected that she would not be paid. App. to Def.'s Aff. at 1 (Letter from John D. Lynch, Esq. to Chief Judge DeRobbio dated Feb. 7, 2005).[7] The letter stated that a report from her physician, Frank W. Sullivan, M.D., was enclosed and that it was his recommendation that "she take a medical leave of absence from work for the next several weeks." Id.[8] The letter further referenced her counsel's "understanding" that an unpaid leave of absence would not adversely affect the medical or retirement benefits to which she otherwise would be entitled. Id.[9] There is no evidence in the record to suggest that this understanding was the product of any express communication *Page 6 
between (1) Judge Yashar or her counsel and (2) Chief Judge DeRobbio or any other state official.
Chief Judge DeRobbio responded, by letter dated February 10, 2005, in one substantive line as follows: "Pursuant to the request contained in your letter of February 7, 2005, and the accompanying report from Frank W. Sullivan, M.D., dated February 8, 2005, Judge Marjorie R. Yasharshall be placed on leave without pay status retroactive to Tuesday, February 1, 2005." App. to Def.'s Aff. at 2 (Letter from Chief Judge DeRobbio to John D. Lynch, Esq. dated Feb. 10, 2005) (emphasis added). In his letter, Chief Judge DeRobbio did not characterize Judge Yashar's requested leave as medical in nature and made no representations regarding her entitlement to continued medical or pension benefits during her unpaid leave of absence. According to her affidavit, Judge Yashar understood that she was placed on "medical leave" and suggests that the absence of pay during that leave was voluntary on her part. Def.'s Aff. at ¶¶ 7, 10. Judge Yashar received medical insurance benefits during the time that she was on her unpaid leave of absence and thereafter, from February 1, 2005 through September 27, 2005. Def.'s Aff. at ¶ 11.
Also, on February 10, 2005, Joseph P. Ippolito, District Court Administrator and Magistrate, sent a letter to J. Joseph Baxter, Jr., State Court Administrator, with a copy to Chief Justice Frank J. Williams, enclosing a copy of Chief Judge DeRobbio's letter to Judge Yashar's attorney dated February 10, 2005. App. to Def.'s Aff. at 3 (Letter from District Court Administrator Joseph P. Ippolito to State Court Administrator J. Joseph Baxter, Jr. dated Feb. 10, 2005). In his letter, District Court Administrator Ippolito characterized Chief Judge DeRobbio's letter as "directing that Judge Marjorie Yashar of *Page 7 
the RITT be placed on leave without pay status." Id. District Court Administrator Ippolito further stated that he was transmitting Chief Judge DeRobbio's letter to the State Court Administrative Office for processing by the Human Resources Division. Id. There is no evidence in the record as to the administrative processing of Judge Yashar's leave without pay request that ensued thereafter.
On or about February 23, 2005, according to her affidavit, Judge Yashar received a formal notice from the Commission regarding the complaint that had been filed with it against her. Def.'s Aff. at ¶ 12. It advised her that the charges against her would be pursued and that a public hearing would be scheduled. Id.[10] According to other records in this case, the Commission served notice upon her on April 1, 2005, following a preliminary investigation into the charges, captioned "Notice of Investigation, Nature of Charges and Public Hearing" charging that on various dates in 2004, she either failed to appear to perform her duties as Magistrate Judge or she arrived late for, or departed early from, such duties. See In re Marjorie R. Yashar, C.A. No. 05-271-M.P.; App. to Def.'s Aff. at 25-26. It is not clear whether this is the notice to which she referred in her affidavit.
By letter to Chief Judge DeRobbio dated May 11, 2005, Judge Yashar requested, through counsel, that she be allowed to return to work at some unspecified date in the "near future." App. to Def.'s Aff. at 4 (Letter from John D. Lynch, Esq. to Chief Judge DeRobbio dated May 11, 2005). In that letter, her counsel referred to his earlier letter of February 7, 2005, when he requested that "Judge Yashar be allowed to take a temporary medical leave, during which time she did not expect to receive her salary." Id. Her *Page 8 
counsel stated further that he had "been informed that Judge Yashar's progress is such that she expects to be able to return to work in the near future." Id. He asked Chief Judge DeRobbio to "take all of those steps necessary to return Judge Yashar to her paid salary status at this time." Id.[11]
In response, Chief Judge DeRobbio expressed a willingness to consider Judge Yashar's request to return to work, on the condition that she provide him with medical evidence pertinent to her prior request for leave and her present fitness to serve, including a statement from Dr. Frank W. Sullivan as to her history, diagnosis, and prognosis so that he could "carry out [his] duties as supervising Chief Judge." App. to Def's Aff. at 5 (Letter from Chief Judge DeRobbio to John D. Lynch, Esq. dated May 12, 2005).[12] During further exchange of correspondence, counsel for Judge Yashar questioned Chief Judge DeRobbio's authority to request a letter from her physician before allowing her to return to active duty since Judge Yashar had requested voluntary medical leave. App. to Def.'s Aff. at 6 (Letter from John D. Lynch, Esq. to Chief Judge DeRobbio dated May 13, 2005).[13] Her counsel took the position that her "request to be placed on non-pay status was voluntary" on her part and that she was "entitled to be returned to pay status" because "presumably she has the same rights with regard to paid medical leave as any *Page 9 
other judge." Id. He asked that Judge Yashar be returned to paid status without further delay. Id.
In response, Chief Judge DeRobbio wrote: "I did not place her on medical leave; as requested, she simply was placed on [voluntary] leave without pay." App. to Def.'s Aff. at 7 (Letter from Chief Judge DeRobbio to John D. Lynch, Esq. dated May 13, 2005).[14] Chief Judge DeRobbio further noted that he took the "unprecedented step" of placing Judge Yashar on voluntary leave without pay based on the totality of circumstances as they existed at the time, including the note from Dr. Frank W. Sullivan which accompanied her February 7, 2005 request for leave. Id. While indicating that he was ready and willing to return Judge Yashar to active duty, he was concerned about doing so in light of the note from her physician that referenced a "longstanding problem" regarding her "[medical] condition." Id. Chief Judge DeRobbio again pressed the need for a current medical report from her physician to determine whether Judge Yashar was fit to be returned to active duty.Id. Chief Judge DeRobbio further advised that if Judge Yashar now wanted to be placed on medical leave with pay, she would be required to provide him with medical documentation (as to diagnosis and prognosis) to justify her continued absence from her duties while receiving pay.Id.
Judge Yashar's counsel responded to Chief Judge DeRobbio by letter dated May 16, 2005, assuring him that he would speak to Dr. Frank W. Sullivan during that week regarding the Chief Judge's request. App. to Def.'s Aff. at 9 (Letter from John D. Lynch, *Page 10 
Esq. to Chief Judge DeRobbio dated May 16, 2005). Her counsel reiterated his request that Judge Yashar be placed on paid status immediately. Id.[15]
On May 25, 2005, Judge Yashar's counsel sent a letter by facsimile to Chief Judge DeRobbio, enclosing a letter from Dr. Frank W. Sullivan, dated May 19, 2005, regarding Judge Yashar. App. to Def.'s Aff. at 10 (Letter from John D. Lynch, Esq. to Chief Judge DeRobbio dated May 25, 2005).[16] The letter from Dr. Frank W. Sullivan was neither attached to Judge Yashar's affidavit nor otherwise provided to this Court by the parties. According to a later letter sent from Judge Yashar's counsel to Chief Judge DeRobbio, Dr. Frank W. Sullivan apparently stated in his letter that he "felt her prognosis was good and that she would return to work." App. to Ex.'s Aff. at 11 (Letter from John D. Lynch, Esq. to Chief Judge DeRobbio dated June 1, 2005). Dr. Frank W. Sullivan stated that, in his opinion, "she can resume working on or about June 1, 2005."Id.
Apparently, on May 31, 2005, Judge Yashar's counsel had some communication regarding the restoration of Judge Yashar's pay status with Chief Judge DeRobbio who indicated that he had not returned her to paid status. See id. On the following day, June 1, 2005, the parties' positions hardened. Judge Yashar's counsel sent a letter by facsimile to Chief Judge DeRobbio in which he stated: "[quite] frankly, I was shocked with your response that you had not yet returned Judge Yashar to her pay status. It is again *Page 11 
requested that that pay status be returned to Judge Yashar without delay." Id.[17] Chief Judge DeRobbio responded immediately, by facsimile, stating that her request to be returned to paid status was denied. App. to Def.'s Aff. at 13 (Letter from Chief Judge DeRobbio to John D. Lynch, Esq. dated June 1, 2005).[18] Also on June 1, 2005, Judge Yashar attests that she physically presented herself for work at the RITT and advised the administrator of the RITT that she was ready, willing and able to resume the bench. Def.'s Aff. at ¶ 15. She claims that she reported to work for the week of June 1, 2005 through June 5, 2005 and part of the following week, but was given no cases or assignments and was not restored to paid salary status. Id.
On June 13, 2005, based on Chief Judge DeRobbio's refusal to return her to active duty with pay, Judge Yashar filed a petition for writ of mandamus in the Superior Court to compel him to restore her to paid status as an active member of the judiciary. The Hon. Justice MarjorieR. Yashar v. The Hon. Justice Albert E. DeRobbio, in his Capacity asChief Judge of the District Court and in his Capacity as Supervisor ofthe Rhode Island Traffic Tribunal, C.A. No. PC 05-2990 (R.I.Super.Ct. 2005) (Petition) (filed June 13, 2005). In that petition, Judge Yashar alleged that she had asked Chief Judge DeRobbio, on or about February 1, 2005, "to be placed on leave without pay status from her duties because of medical reasons" and that he had granted that request. Petition, ¶¶ 4, 5. She then alleged that she had asked Chief Judge DeRobbio in May 2005 to return her to paid status, that she had documented her medical ability to return to work *Page 12 
as he had requested, and that she had reported to work as of June 1, 2005 and indicated her willingness and ability to resume her judicial duties. Id. at ¶¶ 5-9. She further alleged that Chief Judge DeRobbio had failed to grant her request to be restored to paid status as an active member of the judiciary, in violation of Rhode Island law, as only the Commission can suspend or remove her from her position as a judge of the RITT. Id. at ¶¶ 10-14, 19. She sought a writ of mandamus to compel her return to paid status as a RITT judge, asserting that she had a clear legal right to such relief and that Chief Judge DeRobbio had no discretion to refuse her request. Id. at ¶¶ 15-18.
On or about August 1, 2005, Judge Yashar filed a motion for issuance of a writ of mandamus and a supporting memorandum to which Chief Judge DeRobbio filed an objection and memorandum. See Yashar v. DeRobbio, C.A. No. PC 05-2990 (R.I.Super.Ct. 2005). In her memorandum in the mandamus action, it should be noted that Judge Yashar asserted that "[i]n or about February, 2005, [she] requested that she be placed on leave without pay status from her duties due to medical reasons, and pursuant to her request, [Chief Judge DeRobbio] granted said request and allowed her to remain out of work without pay." Pls.' Mem. at 1-2.
Judge Yashar's motion for issuance of a writ of mandamus was heard before the Presiding Justice of the Superior Court, Joseph F. Rodgers, Jr., on August 5, 2005. During the course of oral argument at the hearing, counsel for Judge Yashar engaged in colloquy with the Court, as follows:
 THE COURT: Did she not request to be placed on unpaid leave?
 [COUNSEL TO JUDGE YASHAR]: She did, Your Honor . . . I believe she was out from February to May. She's not *Page 13 
looking for that pay. . . . She's not looking for the time — for money for the time she was out of work and had requested to be out of work.
Tr. of Mandamus Hr'g at 15-16.
Following that hearing, Presiding Justice Rodgers denied Judge Yashar's mandamus petition, finding that Chief Judge DeRobbio had acted properly in accordance with the Code of Judicial Conduct. Id. at 16. In his bench decision, the Presiding Justice referred to provisions of the Code in denying mandamus relief: "`a judge who receives information indicating a substantial likelihood that another judge has committed' — or, by implication, will commit — `a violation of this Code shall take appropriate action.'" Id. (citing R.I. Supreme Ct. Rules, Art. VI, Rule 1 (Code of Judicial Conduct), Canon 3 (D)). He reasoned:
 Doesn't [Chief Judge DeRobbio] have the right now, after being alerted by the judge herself of her deficiency, to make inquiry as to her ability to perform her duties as required by not only the statute but the Rules of Judicial Conduct?
 It very well might be that in most circumstances that one could imagine, Judge DeRobbio would not possess the power that he had chosen to exercise in the unique circumstances of this case; but the Court cannot ignore that it was Judge Yashar who placed herself in that position by alerting the Judge to her inability to continue to do the work required of her.
 Interesting to note, also, that the request to be placed on unpaid leave for an indefinite amount of time, that request also was accompanied by the expectation that her service record would continue during the time period she wasn't working. Whether that is appropriate or not is for another forum to decide.
 Based on the unique circumstances presented in this particular case, based on the fact that it was her request to be placed on unpaid leave because of particular [medical] problems, Judge DeRobbio, in this Court's opinion, not only had the right but, indeed the responsibility to the people of this state to be assured that the deficiency was sufficiently resolved so that the *Page 14 
judge could perform her duties consistent with the Judicial Code of Conduct.
Id. at 17-18. The order denying her motion for issuance of a writ of mandamus entered on August 15. 2005. Yashar v. DeRobbio, C.A. No. PC05-2990 (R.I.Super.Ct. 2005) (Order) (filed Aug. 15, 2005). Judge Yashar appealed the denial of her mandamus petition to the Rhode Island Supreme Court. Id. (Notice of Appeal) (filed Aug. 24, 2005).
Judge Yashar claims here that, beginning some time in the summer of 2005, while her mandamus action and the charges against her with the Commission on Judicial Tenure and Discipline were pending, she entered into settlement negotiations with counsel for the Commission and counsel for Chief Judge DeRobbio. Def.'s Aff. at ¶ 17. She claims that, during those negotiations, she sought definitive answers regarding her retirement pension. Id. at ¶ 18. In her words, "my primary concern, if I was going to settle, was that I would receive a full pension at 100% of my salary, as I understood was provided by statute." Id. at ¶ 19.
On June 7, 2005, Judge Yashar wrote to the State Court Administrator, J. Joseph Baxter, Jr., asking him to "reconfirm to [her] in writing . . . when [she would] be eligible to receive a fully vested pension equal to 100% of [her] annual salary in accordance with R.I.G.L. § 8-8.2-6." App. to Def.'s Aff. at 14 (Letter from Judge Yashar to J. Joseph Baxter, Jr. dated June 7, 2005).[19] Judge Yashar also sought an answer to this same question from the General Treasurer and Chairman of the ERSRI, Paul J. Tavares. App. to Def.'s Aff. at 16 (Letter from Judge Yashar to Paul J. Tavares dated June 24, 2005). In *Page 15 
her letter to the General Treasurer and Chairman of the ERSRI, she advised him that she was part of the non-contributory pension system for judges, that she had unlimited sick time as a member of the judiciary, and that she was considering retirement in the near future.Id.[20] Indeed, she would turn 65 as of July 5, 2005, and would reach the 20 year anniversary of her date of appointment to the bench 5 days later, making her eligible to retire with a full pension as of July 10, 2005, as long as the period of her unpaid leave of absence constituted pensionable service under state law. See R.I. Gen. Laws § 8-8.2-6; Def.'s Aff. at ¶¶ 1, 2.
In response to her inquiry about her pension, the State Court Administrator, J. Joseph Baxter, Jr., responded that he could only confirm her base entry date for state service and that "[m]atters relating to retirement, such as your eligibility date, are within the jurisdiction of [ERSRI]." App. to Def.'s Aff. at 15 (Letter from J. Joseph Baxter, Jr. to Judge Yashar dated June 28, 2005).[21] Soon thereafter, Judge Yashar received a letter from Frank J. Karpinski, the Executive Director of the ERSRI, in which Mr. Karpinski informed Judge Yashar that he was responding on behalf of the General Treasurer to her prior inquiry and clarifying statements made to her by the State Court Administrator. App. to Def.'s Aff. at 17 (Letter from ERSRI Executive Director Frank J. Karpinski to Judge Yashar dated July 6, 2005).[22]
The letter stated as follows:
 Please be advised that the Employees' Retirement System of Rhode Island ("ERSRI") only acts as a disbursement agent for *Page 16 
those judges who do not participate in the Judicial Retirement System Trust (the "Trust"). Retirement eligibility dates and benefit amounts for members who do not contribute to the Trust are determined and provided by the Court System to ERSRI. According to Mr. Baxter, your appointment date is July 10, 1985, and consistent with Rhode Island General Law § 8-8.2-7, you are not a contributing member of ERSRI. Thus, ERSRI has no records or information on your employment. I would refer you to Mr. Baxter or the Chief Judge of the Traffic Tribunal for any retirement information.
Id. (emphasis in original).[23]
Settlement negotiations continued over the course of the summer and into the early fall of 2005. Judge Yashar attests that a settlement proposal was made to her as follows:
 a. I would admit to certain but not all of the charges pending before the Commission and to [sic] accept a public censure with respect to those charges.
 b. I would agree to dismiss my appeal from the mandamus ruling.
 c. I would be returned to "active" status, would waive all claims for backpay or for pay during the time I had been on leave-without-pay status, would immediately retire, and would be eligible to receive my fully vested pension equal to 100% of my annual salary, but would waive any claim to such retirement benefits up to and until December 30, 2005. *Page 17 
Def.'s Aff. at ¶ 20. She claims that the terms of that settlement were outlined in a memorandum dated September 20, 2005 and entitled "Confidential Communication Between Counsel of Settlement of Claims" from J. Renn Olenn, counsel for Chief Judge DeRobbio in the mandamus proceeding, to counsel for the Commission, Marc DeSisto, and her counsel in the Commission proceedings, James D'Ambra. App. to Def.'s Aff. at 19-20. That memorandum enclosed drafts of various documents for review and contemplated a "closing" on September 28, 2005, at which time originals of each of the following documents, drafted on appropriate letterhead and signed by their authors, would be exchanged to effectuate the settlement:
 1. September 26 draft of a letter from Chief Judge DeRobbio to Judge Marjorie Yashar returning her to "active" service.
 2. September 27 letter from Judge Yashar to Chief Judge DeRobbio announcing her immediate retirement and waivers of claims and pension benefits. (To be drafted by Attorney D'Ambra.)
 3. September 27 letter from Chief Judge DeRobbio acknowledging receipt of Judge Yashar's retirement and waivers of claims and pension benefits. (Note initialed change in the letter which will appear in the final draft.)
 4. September 27 letter from Chief Judge DeRobbio to Joseph Baxter transmitting Judge Yashar's letter of retirement, and her waiver of claims and pension benefits.
 5. Needed: A letter from Attorney DeSisto dated September 22 and enclosing the amended complaint from the Commission on Judicial Tenure and Discipline which detail the charges against Marjorie Yashar and which have been filed in the Commission record. (Attorney DeSisto to draft and file. A copy to be provide [sic] to all counsel in advance of the closing.)
 6. Needed: An answer to the amended complaint from Attorney D'Ambra dated September 22 admitting to the charges as stated in the amended complaint filed by the Commission on Judicial Tenure and Discipline and which has been filed in the Commission record. (Attorney D'Ambra to draft and Attorney DeSisto to file. A copy is to be provided to all counsel in advance of the closing.) *Page 18 
 7. A letter dated September 27 from Chief Judge DeRobbio to Judge Pfeiffer in his capacity as Chairman of the Commission on Judicial Tenure and Discipline. (This letter is conditioned upon a review by Chief Judge DeRobbio of the amended compliant [sic], answer, and the filing of the documents in the public record.)
 8. A draft of a dismissal stipulation of the withdrawal of the appeal of the Order denying issuance of a Writ of Mandamus and a dismissal with prejudice of the Petition for a Writ of Mandamus. (The original to be filed after the closing by Attorney Olenn. Attorney D'Ambra to coordinate with Attorney Carrera the drafting, signing, and delivery to Attorney Olenn at the closing.)
 9. A confidential and informational letter by Attorney D'Ambra from Court Administrator Joseph Baxter.
Id. (emphasis added). The drafts of the documents referenced in the memorandum as enclosures were not attached to the memorandum provided to this Court as part of Judge Yashar's affidavit or otherwise. Indeed, the record does not disclose whether in fact a "closing" occurred and, if so, what documents were exchanged.
According to Judge Yashar, she agreed to the terms of the proposed settlement, as long as it were determined by the proper authority that she would be entitled to receive her full pension. Def.'s Aff. at ¶ 22. She understood, based on the letters that she had received from J. Joseph Baxter, Jr., as State Court Administrator, and Frank J. Karpinski, as the Executive Director of the ERSRI, that the Office of the State Court Administrator was the proper authority to make that determination. Id. At the time that she received the memorandum outlining the terms of the proposed settlement, she claims that her attorney had not yet received confirmation from the State Court Administrator that she was entitled to a full pension. Id. at ¶ 23. *Page 19 
On September 22, 2005, the Assistant Administrator of Employee Relations, David R. Heden, sent Judge Yashar a letter regarding the "Calculation of Retirement Benefits," which stated as follows:
 Pursuant to your request, this office has determined your retirement benefits as of December 30, 2005, to be $120,310 annually, based on your entry date of 07-10-1985, and your reaching the age of sixty-five (65) years, pursuant to R.I.G.L. Section 8-8.2-6(a).
App. to Def.'s Aff. at 21 (Letter from David R. Heden to Judge Yashar dated Sept. 22, 2005). David R. Heden copied his letter to Chief Judge DeRobbio; Joseph Baxter, State Court Administrator; and J. Renn Olenn, counsel to Chief Judge DeRobbio in the mandamus action. Judge Yashar viewed this letter as confirmation that she was entitled to a full pension. Def.'s Aff. at ¶ 24. She claims that after she received the letter from David R. Heden, she agreed to resolve all of the pending matters as had been outlined. Id. at ¶ 25. She attests that "[she] would not have agreed to the proposal if [she] had not received the letter from Mr. Heden and if it had not been part of the settlement documents."Id. at ¶ 26.
Judge Yashar claims further that, consistent with the settlement agreement, the parties thereafter exchanged and filed various additional letters and documents, summarized hereafter, to effectuate their settlement. Id. at ¶¶ 26-35. On September 26, 2005, Chief Judge DeRobbio sent a letter to Judge Yashar to advise her that, as of that date, she was returned to active status as a RITT judge. App. to Def.'s Aff. at 22 (Letter from Chief Judge DeRobbio to Judge Yashar dated Sept. 26, 2005).[24] *Page 20 
On September 27, 2005, Judge Yashar returned to work for one day and, by letter of the same date, gave notice of her retirement, effective immediately. App. to Def.'s Aff. at 23 (Letter from Judge Yashar to Chief Judge DeRobbio dated Sept. 27, 2005). In her letter to Chief Judge DeRobbio, with a copy to Chief Justice Frank J. Williams and State Court Administrator, J. Joseph Baxter, Jr., Judge Yashar stated as follows:
 This letter will advise you that I am retiring from active service immediately. I have responded to the Amended Complaint of the Commission on Judicial Tenure and Discipline as set forth in the Answer and Proposal for Resolvement.
 As a condition of my retirement, I am waiving any claim I may have for pay during that time beginning when I requested a "leave without pay status" up to June 1, 2005 when I presented myself at the Traffic Tribunal in order to return to work. I also waive and renounce any right, claim or entitlement to back pay or pay of any nature from June 1, 2005 up to September 26, 2005 or the date I was returned to active status. I further request that my pension benefits be conditioned upon my voluntary waiver of all pension pay and benefits from September 27, 2005 up to December 30, 2005.
 Please see that my notice of immediate retirement together with the above waivers of my rights are transmitted to the appropriate authority.
Id. Chief Judge DeRobbio acknowledged receipt of that letter on that same date and further acknowledged Judge Yashar's voluntary waiver of any claim for back pay, any claim for the period of time when she was given "leave without pay," and any and all pension benefits to which she might be entitled up to December 30, 2005. App. to Def.'s Aff. at 24 (Letter from Chief Judge DeRobbio to Judge Yashar dated Sept. 27, 2005). He stated that he forwarded both her letter and his letter to the State Court Administrator on that date. Id.[25] On September 30, 2005, Judge Yashar filed in the Superior Court a *Page 21 
stipulation withdrawing her appeal of the order denying her motion for issuance of a writ of mandamus and dismissing her mandamus action.Yashar v. DeRobbio, C.A. No. PC 05-2990 (R.I.Super.Ct. 2005) (Dismissal Stipulation) (filed Sept. 30, 2005) (Ex. B to Def.'s Summ. J. Mem.).
With respect to the matter pending before the Commission on Judicial Tenure and Discipline, the Commission filed an Amended Notice of Investigation on September 26, 2005 that detailed the charges, as amended, against Judge Yashar. Def.'s Aff. at ¶ 26.[26] The 4 additional charges arose generally out of Judge Yashar's alleged failure to follow Chief Judge DeRobbio's directives to allow litigants to pay fines in lieu of a court appearance, her ex parte communication with the father of a litigant without notice to the prosecution, her misconduct at the Providence police station following her arrest, and her misbehavior on June 22, 2005 following an automobile accident in which she was involved. App. to Def.'s Aff. at 25-26.
A hearing on all of the disciplinary charges against Judge Yashar had been scheduled for November 7, 2005. Id. But on or about September 26, 2005, Judge Yashar filed an "Answer to the Amended Charges and Proposal for Resolvement [sic]" and, in that answer, acknowledged guilt of the charges set forth in her answer and agreed to accept a public censure.Id.; Def's Aff. at ¶ 31. In light of her admissions, the Commission agreed not to pursue the 5th pending charge against her for the alleged misconduct surrounding the accident of June 22, 2005. App. to Def's Aff. at 25-26. She and the Commission, acting through counsel, then filed jointly a "Petition for Waiver of the Public Hearing and Findings of Fact Pursuant to Rule 20 of the Supreme Court Rules *Page 22 
for the Commission on Judicial Tenure and Discipline." Def.'s Aff. at ¶ 32.[27] By order dated October 5, 2005, the Supreme Court granted the petition for waiver of public hearing, accepted the Commission's recommended sanction for the conduct to which Judge Yashar admitted in her petition, and publicly censured her for her misconduct. In reMarjorie R. Yashar, C.A. No. 05-271-M.P. (R.I. 2005) (Order) (filed Oct. 5, 2005); App. to Def.'s Aff. at 25-26. Between July 10, 1985 and September 27, 2005, Judge Yashar attests that she was never suspended or removed from her position as a judge by either the Commission or the Supreme Court nor was she determined by either of those bodies to be unfit or incapable of performing her duties as a judge. Def's Aff. at ¶ 36.
On December 8, 2005, Judge Yashar went to the Human Resources Office at the Supreme Court and signed papers that she understood were the formal application for her pension. Id. at ¶ 34. Among these documents, Judge Yashar filled out health, dental, and vision insurance forms; a direct deposit form; and a federal tax withholding preference, in which she stated that she was a Florida resident. Id. (Supp. Docs.). In January 2006, Judge Yashar began receiving retirement pension payments, which reflected a calculated amount based on 100% of her salary as of the date of her retirement, consistent with the letter to her from David R. Heden dated September 22, 2005. Id. at ¶ 35.
On March 31, 2006, J. Joseph Baxter, Jr. responded to a letter from Attorney General Patrick C. Lynch[28] to explain the computation of Judge Yashar's pension. He stated, in relevant part, as follows:
 I am in receipt of your letter dated today, March 31, 2006 regarding the computation of Judge Yashar's service time credit towards retirement. It is important to understand that the *Page 23 
Judiciary's role in the determination of a judge's service time credit is a ministerial one — limited to forwarding the judge's start date, retirement date, and the rate of compensation at the time of retirement. As you aptly point out in your letter, Rhode Island General Laws § 36-9-5
provides that `judges of the administrative adjudication court (among others) are exempt from the provisions of chapters 8-10 of Title 36.' . . . As such, reliance on the language set forth in those chapters to construe pension statutes is not necessarily controlling.
 Section 36-9-5(a) does not preclude judges from participating in the Employees Retirement System of Rhode Island (ERSRI) or relieve them of the administrative powers of the Retirement Board, but simply establishes that judges (general officers, general assembly members, school teachers, and members of the state police) are treated differently than other state employees for purposes of retirement and pension benefits. . . .
 Unlike other state employees, judges remain in `state service' from the time of their engagement (and are at any time subject to recall unlike other state employees) until one of five things happen — death, retirement, incapacity, or suspension or removal by the Commission on Judicial Tenure and Discipline. As a result, absent of any of these events happening, a judge is entitled to receive pension benefits based on age and length of engagement only.
 It is clear that a difference of interpretation has arisen as to how the existing statutes could be applied. In light of the above, we would encourage your full review and intend to cooperate fully to resolve this situation consistent with statutory intent, and in the interest of justice and public policy.
Ex. A to Def.'s Summ. J. Mem. (Letter from J. Joseph Baxter, Jr. to Attorney General Patrick C. Lynch dated Mar. 31, 2006). The letter was copied to Chief Justice Frank J. Williams; Paul J. Tavares, General Treasurer; and Frank J. Karpinski, Executive Director of the ERSRI.Id.
From January 2006 to date, it appears that Judge Yashar has continued to receive retirement pension payments in the amount of 100% of her pre-retirement salary, *Page 24 
consistent with the determination of the amount of pension benefits to which she was entitled as stated in David R. Heden's letter to her dated September 22, 2005. App. to Def.'s Aff. at 21 (Letter from David R. Heden to Judge Yashar dated Sept. 22, 2005). According to Frank J. Karpinski, Executive Director of the ERSRI, the ERSRI acts only as the disbursement agent for those funds, in accordance with the eligibility dates and benefit amounts supplied to it by the court system, as Judge Yashar is part of the non-contributory judicial pension system. App. to Def.'s Aff. at 17 (Letter from ERSRI Executive Director Frank J. Karpinski to Judge Yashar dated July 6, 2005).
 II Procedural History
On April 5, 2006, plaintiffs, the State of Rhode Island, by and through its Attorney General Patrick C. Lynch, and the Employees' Retirement System of Rhode Island, by and through its Chairman, Paul J. Tavares, filed a complaint against defendant Marjorie R. Yashar seeking declaratory and equitable relief.[29] The State asks this Court to declare that Judge Yashar is entitled to a pension based on her years of actual service, which it alleges is less than the statutory twenty (20) years of service required by R.I. Gen. Laws § 8-8.2-6 to receive a "full" pension equal to 100% of the judge's preretirement salary, which she is currently receiving. Amended Complaint ¶ 5. The State alleges that Judge Yashar voluntarily removed herself from service on February 1, 2005, did not serve for approximately 8 months thereafter, returned to active service on September 26, 2005, for one day, and then retired on September 27, 2005. Id. at ¶ 4. The State asserts that service time did not accrue during Judge Yashar's leave of absence; *Page 25 
therefore, Judge Yashar is entitled to a pension commensurate with her 19 years and 6 months of service, which, by statute, would reduce her pension to 75% of her annual salary prior to retirement. Id. at ¶ 5. The State further seeks a declaration that any overpayments received by Judge Yashar since the date of her retirement be repaid to the State.Id. at ¶ 6.
Judge Yashar filed an answer and counterclaim on May 30, 2006. She raised several affirmative defenses, most notably that the State lacks both standing and jurisdiction to pursue its action and that it is barred by contract law and estoppel from reducing her pension. Answer, Affirmative Defenses ¶ I. In her counterclaim, Judge Yashar seeks a declaration that she has a statutory right to the retirement pension that she is currently receiving because she served at least 20 years as a judge, from her engagement as a judge on July 10, 1985 to her retirement on September 27, 2005. Counterclaim, Count I. Judge Yashar also seeks a declaration that she has a contractual right to her retirement pension pursuant to a settlement agreement with the Commission on Judicial Tenure and Discipline and Chief Judge DeRobbio and that the settlement constitutes an accord and satisfaction.Id., Counts II and IV. She further seeks a declaration that the State is estopped from reducing her pension because she detrimentally relied on the misrepresentations made by the judicial branch in making her decision to retire. Id., Count III. Additionally, Judge Yashar asks this Court to declare that the State Court Administrator's determination of her pension benefits is a binding agency decision. Id., Count V. In addition to seeking declaratory relief, Judge Yashar pleads, in the alternative, that if this Court finds in favor of the State, she be granted *Page 26 
equitable relief that would allow her to return to work to complete her 20 years of service so that she may receive 100% of her pre-retirement salary. Id., Count VI.
The State filed an answer to Judge Yashar's counterclaim on June 7, 2006. Pls.'/Counterclaim Defs.' Answer to Counterclaim. It seeks dismissal of the counterclaim, arguing that "statutory rights cannot be altered by agreement or representation." Id. Affirmative Defenses ¶ 2.
The State filed a motion for partial summary judgment and supporting memorandum on June 9, 2006, asking this Court to declare, as a matter of law, that Judge Yashar is entitled to a pension equal to only 75% of her annual salary.[30] Judge Yashar filed a cross-motion for summary judgment and supporting memorandum and affidavit on September 13, 2006, seeking dismissal of this action for lack of standing and lack of jurisdiction. Alternatively, she asks this Court to declare, as a matter of law, that she is entitled to receive a 100% pension pursuant to the terms of R.I. Gen. Laws § 8-8.2-6(a) and principles of contract law and equitable estoppel. The State filed a reply memorandum on September 27, 2006.
On October 23, 2006, this Court entertained oral arguments on the parties' cross motions for summary judgment. While this Court had the case under advisement, it inadvertently discovered, while conducting its own independent research, that new regulations for the judiciary had taken effect as of January 29, 2005. Judicial Personnel Rules and Regulations (eff. Jan. 29, 2005). This Court then notified counsel for both parties forthwith, at a hearing on February 9, 2007, of the existence of the new regulations. It afforded the parties the opportunity to submit supplemental memoranda *Page 27 
regarding the applicability of the new regulations, if any, to the issues in this case. On February 28, 2007, counsel for Judge Yashar and the State, respectively, submitted supplemental memoranda. This Decision follows this Court's review of all of the parties' written submissions and arguments.
 III Standard of Review
As the Rhode Island Supreme Court has noted, "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter before the court that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. BurrillvilleRacing Association, 603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v.State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)). Additionally, "[i]n respect to such a motion the court does not pass upon the weight or the credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320 (citingLennon v. MacGregor, 423 A.2d 820 (R.I. 1980)).
Overall, "`[t]he purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues.'" Weaver v. Am. Power Conversion Corp., 863 A.2d 193, 197
(R.I. 2005) (quoting Rotelli v. Catanzaro, 686 A.2d 91, 93 (R.I. 1996)). As such, "the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact." Industrial National Bank, 397 A.2d at 1313 (citing Rhode Island Hospital Trust National Bank v. Boiteau,376 A.2d 323 (R.I. 1977)). *Page 28 
However, "a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions of legal opinions." Accent Store Design,Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996) (citingManning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). The opposing party has "an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v.Bristol Boat Co., Inc., 705 A.2d 969, 971 (R.I. 1998) (citing St. PaulFire Marine Insurance Co. v. Russo Brothers, Inc., 641 A.2d 1297, 1299
(R.I. 1994); Super. R. Civ. P. 56(e)). "Consequently, if no issues of material fact appear and the moving party is entitled to judgment as a matter of law, the trial justice may enter an order for summary judgment." Steinberg, 427 A.2d at 340.
 IV Analysis A. Standing
In her motion for summary judgment, Judge Yashar argues that neither the Attorney General nor the General Treasurer has standing to bring this suit against her, as neither party has suffered a direct injury-in-fact. She claims that both of these party plaintiffs lack authority under Rhode Island law to determine the value of her pension and that neither one has claimed a direct interest in the outcome of the case.
The State counters that if Judge Yashar is being paid an illegally high pension, then the public is being harmed by the excessive payments she is receiving. According to the State, the Attorney General is able to bring suits on behalf of the public to rectify such wrongs. Similarly, the State argues that since the General Treasurer must issue checks, he has a direct interest in ensuring that the funds he distributes are issued in accordance *Page 29 
with Rhode Island law. According to the State, both the Attorney General and the General Treasurer "have a duty to act to protect the public's money," and this duty carries with it standing to bring the present suit. Pls.' Reply Mem. at 3.
As both Judge Yashar and the State agree, the basic test for standing to sue is whether the challenged action has caused the plaintiff to sustain an injury-in-fact, economic or otherwise. R.I. OphthalmologicalSociety v. Cannon, 317 A.2d 124, 128 (R. I. 1974); Assoc. of DataProcessing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152
(1970). In addition, "[i]n this state it was long ago settled that `[s]uits for the public should be placed in public and responsible hands.'" McCarthy v. McAloon, 83 A.2d 75, 78 (R.I. 1951) (quotingO'Brien v. Board of Aldermen, 25 A. 914, 915 (R.I. 1892)). "The public officer vested with that authority is the attorney general of the state. Only he [or she] may sue to redress a purely public wrong except in those instances where one of the public who is injured has a distinct personal legal interest different from that of the public at large. . . ." Id.
In a case relevant to the present controversy, the Rhode Island Supreme Court was faced with the question of whether the Providence School Committee had standing, on behalf of the citizens of Providence, to challenge a decision of the Board of Regents for Education.School Comm. of the City of Providence v. Board of Regents forEducation, 112 R.I. 288, 288-289, 308 A.2d 788, 789 (R.I. 1973). In that case, numerous school administrators claimed that they had been underpaid for the school year in question due to a salary freeze instituted by the school committee. Id. at 290, 308 A.2d. at 789. The Commissioner of Education ruled in favor of the school administrators, finding that the salary freeze did not apply to them. Id.,308 A.2d at 789-790. The school committee, *Page 30 
acting on behalf of the taxpayers, appealed to the Board of Regents, which upheld the Commissioner's decision. Id. at 291, 308 A.2d at 790. The Supreme Court held that the school committee could make the challenge, holding as follows:
 it is obvious that the committee in this case sought judicial review in an official capacity and as a representative of the People of Providence. It had a real interest in seeing that the department's administrative and supervisory personnel were paid neither less nor more than they were legally entitled to receive. Because the board's decision threatened that interest, the committee, on behalf of the people, was aggrieved and thereby acquired standing. . . .
Id. at 112 R.I. at 294-295, 308 A.2d at 792 (citing Tedford v.Reynolds, 87 R.I. 335, 343, 141 A.2d 264, 268 (1958); Board of PoliceCommissioners v. Reynolds, 86 R.I. 172, 178, 133 A.2d 737, 741 (1957);Irish v. Collins, 82 R.I. 348, 357-58, 107 A.2d 455, 459-60 (1954)).
Here, the public has a profound interest in having this Court determine whether Judge Yashar's pension is lawful. The cost of Judge Yashar's pension could amount to an unfair economic burden on the State's taxpayers if it is determined to be in excess of that allowed her by state law. Indeed, the difference between Judge Yashar receiving a 75% pension and a 100% pension is approximately $30,000 per year. Moreover, to thwart review of the issues raised by the parties in this case could suggest to the public that judges are somehow above the law.
As only the Attorney General may sue to redress a purely public wrong, and as no member of the public injured by excessive pension payments has a distinct legal interest different from that of the public at large, the Attorney General has standing, on behalf of the public, to bring this action. To rule otherwise could allow a public official to grant a *Page 31 
pension to a retired member of the state judiciary, in violation of state law, while depriving the public, as a whole, of the right to challenge that action.[31]
Similarly, the General Treasurer, in his capacity as Chairman of the ERSRI, has an interest in ensuring that any retirement payments disbursed through the ERSRI are made in accordance with state law. Indeed, under R.I. Gen. Laws § 42-10-1, "[the General Treasurer] shall disburse only such sums of money as are authorized by the department of administration, except as may otherwise be provided by law." In addition, he has an interest in this case of defending the role of the ERSRI as only a disbursement agent for judicial pension payments to judges who are part of the non-contributory judicial retirement system.See App. to Def's Aff. at 17 (Letter from ERSRI Executive Director Frank J. Karpinski to Judge Yashar dated July 6, 2005). This Court finds, therefore, that the General Treasurer, in his capacity as Chairman of the ERSRI, has standing as a party plaintiff in this action.
Accordingly, Judge Yashar's motion for summary judgment, to the extent premised on a claim that plaintiffs lack standing to bring this action, is denied.
 B. Jurisdiction
Judge Yashar asserts that the State Court Administrator made a decision to award her a full judicial pension and that his decision is not reviewable in a declaratory judgment proceeding in this Court under R.I. Gen. Laws § 9-30-12. Def.'s Summ. J. Mem. at 23. Rather, she argues, the proper avenue for review of her pension award is by way of common law writ of certiorari to the Rhode Island Supreme Court.Id. at 24-25. *Page 32 
As a calculation of a pension is an administrative decision, it generally would be subject to agency review under the Administrative Procedures Act, R.I. Gen. Laws §§ 42-35-1 (1956) et seq. (the "APA").Id. at 24. Judge Yashar acknowledges, however, that the ERSRI cannot review her alleged pension decision because it acts only as a disbursement agent for judges in the noncontributory system; it has no authority over the judicial pension statute at issue, R.I. Gen. Laws § 8-8.2-6(a), or a judicial pension calculation of the State Court Administrator. Id. Likewise, Judge Yashar argues that the State Court Administrator cannot review his own decision because the judicial pension statute does not afford an applicant for a pension a hearing on the matter. Id. As such, she contends that there is no "contested case" subject to review under the rules of the APA because "a hearing is required by law in order for an administrative matter to constitute a contested case." Id. (quoting Property Advisory Group, Inc., v.Rylant, 636 A.2d 317 (R.I. 1994)); see also R.I. Gen. Laws § 42-35-1(c) (defining "contested case"). As there is no specified forum available for relief, Judge Yashar thus insists that review must be had by common law writ of certiorari to the Supreme Court. Id. at 25.
To the contrary, the State contends that Judge Yashar did not receive a "decision" regarding her pension from the State Court Administrator. The State argues that the pension letter from the Assistant Administrator of Employee Relations, David R. Heden, that calculated her pension at 100% of her pre-retirement salary, was no more than a "ministerial calculation based on and limited to entry date and age."See Pls.' Reply Summ. J. Mem. at 10 (referring to Letter from David R. Heden to Judge Yashar dated Sept. 22, 2005; Letter from J. Joseph Baxter, Jr. to Attorney General Patrick C. Lynch dated Mar. 31, 2006). Since the alleged decision by the State Court Administrator fails to *Page 33 
include a discussion of "service" under the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), or the effect of Judge Yashar's unpaid leave of absence on her pensionable service time, the State submits that the State Court Administrator did not interpret or apply the service requirement in that statute. Id. The State thus asks this Court for declaratory relief, pursuant to the Uniform Declaratory Judgments Act, R.I. Gen. Laws §§ 9-30-1 et seq., to construe the meaning of the term "served," as used in R.I. Gen. Laws § 8-8.2-6(a), and to find that Judge Yashar is entitled, by law, to a pension equal to only 75% of her pre-retirement salary.
To address the question of whether this Court has jurisdiction over the State's claims for declaratory relief, this Court will assume, without deciding, that the State Court Administrator made more than a ministerial pension calculation and determined that Judge Yashar was entitled to a pension of 100% of her pre-retirement salary by crediting her unpaid leave of absence as pensionable service.[32] In making any such decision, however, it is undisputed that the decision would not be subject to review under the APA. See R.I. Gen. Laws § 42-35-1(a) (exempts courts from the definition of agencies subject to the APA);see also In re R.I. Bar Ass'n, 118 R.I. 489, 491 (R.I. 1977) ("It is obvious that the agency described by the APA is a governmental entity, apart from the judicial or legislative branches. . . .") (citingBabineaux v. Judiciary Comm'n, *Page 34 341 So. 2d 396 (La. 1976)). The issue then becomes whether review of that alleged decision is by common law writ of certiorari to the Supreme Court, as Judge Yashar argues, or whether this Court has jurisdiction of this case under the Uniform Declaratory Judgments Act, R.I. Gen. Laws §§ 9-30-1 et seq.
A large number of Rhode Island Supreme Court cases direct that declaratory judgment is appropriate in cases such as the one at bar. Indeed, the case of Bulman v. Kane, 519 A.2d 1123 (R.I. 1987), like this case, was a declaratory judgment action to determine whether a decision of the State Court Administrator that calculated the compensation due a retired judge comported with state law. See Bulman v. Kane, C.A. No. NC85-0060 (R.I.Super.Ct.) (filed May 23, 1985).[33] In that case, James C. Bulman, a recalled retired judge of the Superior Court, filed a declaratory judgment action in the Superior Court to challenge the computation of his longevity pay by the State Court Administrator. The Superior Court issued a declaration in favor of Judge Bulman, which the Supreme Court later reversed. See Bulman v. Kane, 519 A.2d 1123. Although the issue of jurisdiction was not raised or addressed, the Supreme Court did not take issue with the fact that the case had proceeded by way of declaratory judgment in the Superior Court or that it was asked to review the grant of declaratory relief on appeal.Id. at 1125.
In Malachowski v. State of Rhode Island, 877 A.2d 649 (R.I. 2005), the plaintiff appealed a pay reduction decision of the Unclassified Pay Plan Board to the Department of Administration and the Personnel Appeal Board. Id. at 652. Both appeals were dismissed for lack of jurisdiction. Malachowski then appealed to the Superior Court *Page 35 
requesting both APA review and a declaratory judgment in his favor.Id. The Superior Court dismissed his APA appeal on grounds of untimeliness; it dismissed his declaratory judgment action on the grounds "that the APA `is the single and exclusive method of obtaining judicial review of agency decisions.'" Id. at 652-653. Significantly, the Rhode Island Supreme Court reversed, holding that "the Pay Plan Board is not an agency within the purview of the APA" and "that [the] plaintiff properly invoked the jurisdiction of the Superior Court pursuant to the Uniform Declaratory Judgments Act . . . and set forth an adequate claim for declaratory relief." Id. at 655. (citation omitted).
In Bradford Associates v. Rhode Island Division of Purchases,772 A.2d 485 (R.I. 2001), the Rhode Island Supreme Court determined that the suspension of a contractor could not be appealed to the Superior Court under the APA. It nonetheless held, however, that the Superior Court had subject matter jurisdiction under the Uniform Declaratory Judgments Act.Id. at 489-490.
In Roch v. Garrahy, 419 A.2d 827 (R.I. 1980), Donald Roch, then-chair of the Republican State Committee of Rhode Island, as well as several unnamed plaintiffs, brought a declaratory judgment action that alleged that the Governor had violated R.I. Gen. Laws § 17-7-1 (1956) (1969 reenactment) by not appointing a sufficiently representative Board of Elections. Id. at 828-829. The Rhode Island Supreme Court was faced with the question of whether declaratory relief could be sought.Id. at 828. According to the Court, "it is clear that the Superior Court has been granted jurisdiction to render declaratory judgments, construe statutes, and determine the rights, status and other legal relations of the parties. Id. at 830; R.I. Gen. Laws. § 9-30-2. The Court further held that: *Page 36 
 [t]here seems little question that in an appropriate case involving a party with adequate standing, the Superior Court could well consider a controversy in which the construction of a statute was at issue and the determination of compliance by the Chief Executive with an act of the General Assembly was in question. Thus we are of the opinion that the Superior Court in the instant case had jurisdiction of the subject matter.
Id. (emphasis added).
The case of Canario v. Culhane, 752 A.2d 476 (R.I. 2000), involved a former State Police Lieutenant who had been denied a pension for alleged disabilities by the Superintendent of the State Police, Colonel Edmond S. Culhane. Id. at 477-478. Canario appealed this decision to the Superior Court in which he asserted, inter alia, that he was entitled to a disability pension under state law. Id. at 478. The Superintendent challenged the subject matter jurisdiction of the Superior Court, contending it lacked subject matter jurisdiction to review the decision of the Superintendent. Id. The Court noted that R.I. Gen. Laws §42-28-21 does not provide any specific method of review by the Superintendent regarding a disability pension, except that such determination shall be confirmed by the Governor. Id. At the same time, however, it ruled that the Superior Court has jurisdiction to construe the rights and responsibilities of any party arising from a statute pursuant to the powers conferred upon it by the Uniform Declaratory Judgments Act. Id. at 478-479. The Court reasoned that "[t]his statute gives a broad grant of jurisdiction to the Superior Court to determine the rights of any person that may arise under a statute not in its appellate capacity but as part of its original jurisdiction."Id. at 479 (citation omitted). As such, "the Superior Court had such jurisdiction to determine whether plaintiff was entitled to a disability pension under the facts and circumstances of this case, which were largely undisputed." Id. *Page 37 
This line of authority makes it clear that declaratory relief is available in connection with administrative decisions, like the pension decision Judge Yashar claims was made here by the State Court Administrator, which are not reviewable under the APA. Indeed, this Court would suggest that declaratory relief is appropriate.
The purpose of the Uniform Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with regard to rights, status, and other legal relations." R.I. Gen. Laws § 9-30-12. The Act is to be "liberally construed" to achieve those purposes. Id. It is specifically designed to allow the Superior Court to construe state statutes and declare the rights, status, or other legal relations of parties under them. Id. § 9-30-2. In that regard, it may try any issues of fact pertinent to a request for declaratory relief. Id. § 9-30-9.
The State's petition for declaratory relief in this action — and for that matter the request for declaratory relief of Judge Yashar stated in her counterclaim — raise questions of statutory construction, contract law, and equity. This case involves not simply a review of the alleged decision of the State Court Administrator, therefore, but the broader question of how the judicial pension statute should be interpreted and applied and whether any such interpretation and application should control, as a matter of law and equity, under the facts of this case. The remedies sought by the State, which include a declaration as to the meaning of the judicial pension statute in question, alteration of Judge Yashar's pension benefits in the future, and restitution to the State for unlawful benefits already paid, go well beyond those which a State Court Administrator is empowered to consider or compel. *Page 38 
To suggest, therefore, that the Supreme Court is the only forum where relief can be sought is illogical. To deny jurisdiction here and require the filing of a common law petition for certiorari in the Supreme Court would be tantamount to reading the Uniform Declaratory Judgments Act and equitable powers of the Superior Court out of the law. It could require the Supreme Court justices to become finders of fact and to make a decision regarding the parties' claims in the first instance without the benefit of the findings and reasoning of the court below. Ascribing such a role to the Supreme Court would run counter to its precedent, albeit in the context of certification to it of questions of importance, that suggests that role belongs not to it, but to the Superior Court.[34]
It is the view of this Court, therefore, that it not only has jurisdiction of the matters at hand, but that it has original and exclusive jurisdiction of this action. R.I. Gen. Laws § 9-30-1 (The Superior Court "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."); R.I. Gen. Laws § 8-2-13 ("The superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity.").
It is true, as Judge Yashar argues, that a couple of state court precedents seemingly conflict with this line of precedent.See, e.g., Scolardi v. City of Providence, 751 A.2d 754, 756 (R.I. 2000); Mosby v. Devine, 851 A.2d 1031, 1049-1051 (R.I. 2004). *Page 39 
In particular, the Rhode Island Supreme Court has stated inScolardi that "[i]n the absence of specific statutory delineation of a particular forum for relief, a party must resort to this Court by way of common law certiorari." Scolardi, 751 A.2d at 756.
Both Scolardi and Mosby, however, are distinguishable from the case at bar. In Scolardi, the procedural posture of the case was substantially different from that in the present case. In that case, the Retirement Board of the Providence Employees' Retirement System had assigned certain pension rights to Scolardi, but the City Solicitor of Providence then directed the City Controller to withhold payments, claiming that the pension was illegally awarded. Id. at 754-755. When Scolardi sought "declaratory and injunctive relief and a writ of mandamus" in the Superior Court, he was not seeking a statement of his rights; instead, he sought to have the funds released that were authorized by the board.Id. at 755. The Supreme Court concluded that the trial justice should not have conducted a de novo review of the board's decision because "the decision of the board was not appealed by either party." Id. In the case at bar, there is no administrative appeal process. Furthermore, in Judge Yashar's situation, both she and the State seek to clarify her pension rights. Therefore, a declaratory judgment is appropriate here, and, as such, Scolardi is distinguishable.
In Mosby v. Devine, the Supreme Court held that an administrative appeal could not be made to the Superior Court in a non-APA contested case. Mosby, 851 A.2d at 1051. Mosby, however, never directly addressed the issue of whether a declaratory judgment action could be used as an alternative, and thus is distinguishable on that ground from the present matter. *Page 40 
Moreover, United States Supreme Court precedent makes it clear that a writ of certiorari should be reserved for cases where no other means of review exists and should not be used to review administrative decisions.Degge v. Hitchcock, 229 U.S. 162 (1913). In Degge, the United States Supreme Court had to decide whether a decision by the Postmaster-General to withhold an individual's mail could be challenged by a writ of certiorari. Id. at 169-170. The Supreme Court held that a writ could not be issued because the petitioners could seek an equitable remedy and noted that the writ existed only to be used when no other means to challenge a decision existed. Id. at 171-172. It viewed the case as "an attempt to use the writ for the purpose of reviewing an administrative order," which it held could not be done. Id. at 172 (citations omitted).
Degge responds to Judge Yashar's jurisdictional argument in this case and clarifies that equity can be an appropriate way for an administrative decision to be challenged. Like the decision of the Postmaster General that could not be challenged through a writ of certiorari in the Supreme Court of the United States, any decision of the State Court Administrator here may not be reviewed through the filing of a petition for writ of certiorari in the Supreme Court of Rhode Island. An action for declaratory and equitable relief, filed in this Court, is the appropriate means for this Court to review any such decision and to consider the broader claims for relief stated by the parties. Accordingly, Judge Yashar's motion for summary judgment, premised on a claim of lack of jurisdiction, is thus denied. *Page 41 
 C. The Interpretation and Application of the Judicial PensionStatute R.I. Gen. Laws § 8-8.2-6(a)
To determine the amount of retirement pension to which Judge Yashar is legally entitled, this Court must begin with an analysis of the applicable state statute. Section 8-8.2-6(a) of the Rhode Island General Laws outlines the retirement pensions that are available for RITT judges based on age and length of service:
 (a) Whenever any person engaged as a judge on or before July 2, 1997, has served as a judge of the administrative adjudication court or as a judge of the administrative adjudication court who is reassigned by this chapter to the traffic tribunal for twenty (20) years, or has so served for ten (10) years and has reached the age of sixty five (65) years, the judge may retire from active service and, thereafter, the judge shall receive annually during life a sum equal to three fourths ( 3/4) of the annual salary that the judge was receiving at the time of retirement; provided, however, any person who has served for twenty (20) years and has reached the age of sixty five (65) years, or has so served for fifteen (15) years and reached the age of seventy (70) years, may retired [sic] from active service and, thereafter, the judge shall receive annually during his or her life a sum equal to the annual salary he or she was receiving at the time of his or her retirement. . . .
R.I. Gen. Laws § 8-8.2-6(a) (1956) (emphasis added). There is no dispute here that Judge Yashar was 65 years old as of the date of her retirement. Under this statute, therefore, she is entitled to a retirement pension of 100% of her pre-retirement salary as long as she "served" as a judge for twenty (20) years prior to her retirement. If she "served" for at least ten (10) years but less than twenty (20) years before her retirement, then she would be entitled to a pension of only 75% of her pre-retirement salary.
The dispute between the parties here centers on the definition of the term "served," as it is used in this statute. The State contends that the plain and ordinary *Page 42 
meaning of that term means that a judge must work in paid employment as a judge for the specified time period. Pls.' Summ. J. Mem. at 6. The State claims that the legislature intended to "limit the accrual of [Judge Yashar's] pension benefits to the period of time she actuallyserved as a judge of the [RITT]." Id. (emphasis in original). As Judge Yashar voluntarily removed herself from active service as a judge by taking an extended unpaid leave of absence, the State contends that the length of her service at the time of her retirement fell short of the required twenty (20) years such that she is entitled to a pension of only 75% of her pre-retirement salary. Id. at 8.
In contrast, Judge Yashar construes the term "service" as referring to "state service," such that length of service is measured by the time a judge is within the state service, — i.e., the time from date of employment as a judge until date of retirement, without regard to any leave of absence, paid or unpaid, in the interim. Def.'s Summ. J. Mem. at 16. She contends that her interpretation of the statute should be given deference, as it is the same one adopted by the State Court Administrator, who opined that a judge's service could be interrupted only by death, retirement, disability or an order of suspension or removal of the Commission on Judicial Tenure and Discipline or the Supreme Court. Id. Based on her reading of the statute, she argues that her entire tenure as a judge counts toward her pension calculation because she was still within "state service" during her authorized unpaid leave of absence. Id.
She argues further that, even if this Court were to adopt the State's construction of the pension statute, there is a genuine issue of material fact regarding the characterization of her leave. Id. at 13. She claims that she did not take an unpaid leave of absence; instead, she took an authorized paid medical leave for which she voluntarily relinquished *Page 43 
her right to payment which, even under the State's construction of the statute, would not interrupt her term of service. Id. at 12-13.
To resolve these competing arguments, this Court first must employ settled precepts of statutory interpretation to determine how the term "served," as used in the applicable judicial pension statute, should be construed. This Court must begin by examining "the plain and ordinary meaning of the statutory language" at issue. Henderson v.Henderson, 818 A.2d 669, 673 (R.I. 2003). "`When the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and [the court] must give the words of the statute their plain and obvious meaning. . . . Such meaning is presumed to be the one intended by the Legislature, and the statute must be applied literally.'" McGuirl v. Anjou Intern.Co., 713 A.2d 194, 197 (R.I. 1998) (quoting Wayne Distributing Co. v.R.I. Comm'n for Human Rights, 673 A.2d 457, 460 (R.I. 1996)).
"However . . . when the language of a statute is not susceptible to literal interpretation, it is ambiguous, and [the court] must look to give meaning to the intent of the General Assembly." New Eng. Dev., LLCv. Berg, 913 A.2d 363, 371 (R.I. 2007) (citing Retirement Board ofEmployees' Retirement System of State v. DiPrete, 845 A.2d 270, 279
(R.I. 2004)). It is well-settled that "[a] statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more senses." See Sutherland, Statutes and StatutoryConstruction § 46.04, at 145-146 (N. Singer 6th ed. 2000). *Page 44 
 1. The Plain Meaning of the Judicial Pension Statute
This Court is of the view that the provision of the judicial pension statute in dispute, R.I. Gen. Laws § 8-8.2-6(a), is unambiguous and that the plain meaning of the term "served," as used in the statute, is that a judge must work in paid employment as a judicial officer for the time period specified to gain the promised pension. This interpretation of the subject statutory language is supported by the ordinary dictionary definitions of the terms "serve" or "service." The verb "to serve" means "to work through or perform a term of service." Webster's Third NewInternational Dictionary 2075 (3rd ed. 1961). The noun "service" means "the performance of work commanded or paid for by another." Id. In an employment contract, the term "service" is defined as "the act of serving the labor performed or the duties required."Black's Law Dictionary 1202 (6th ed. 1990). These definitions confirm that the term "served," as used within the judicial pension statute at issue, plainly means the time during which a judge was in the paid employment of the State.
While Judge Yashar attempts to suggest that the term "served" is ambiguous, she does so by arguing that the term means not a period of paid employment, as the State contends, but simply the time a judge remains in state service — whether paid or unpaid — without interruption by death, disability, retirement, suspension or removal. To read the term "served" in that way would be to ignore its plain and obvious meaning — a meaning that is clear and sensible. See McGuirl,713 A.2d at 197. It would require taking words that do not appear in the statute — "state service" — and either substituting them for or adding them to the word actually employed by the legislature: "served." It would be an attempt to replace the clearly stated statutory requirement that a judge serve the specified *Page 45 
period of time in paid employment in state service in order to garner a pension with the diluted and unstated proviso that a judge need only remain in the state service, whether engaged in paid employment or not, to receive the pension specified.
The interpretation of the pension statute advanced by Judge Yashar is not reasonable, as it would allow a judge who remains in state service to receive service credit toward a pension even if the judge does not work and receives no pay. A judge could conceivably remain in the state service for years on an unpaid leave of absence, without performing any judicial duties and without being paid for that absence, and nonetheless count that time to garner a pension for life in the amount of the judge's full salary upon retirement. Such an interpretation is belied by the plain meaning of the term "served," as used in the judicial pension statute, and by common sense; to adopt it would be to impermissibly rewrite the pension statute in violation of the clearly stated intent of the legislature. New England Die Co., Inc. v. General Products Co.,Inc., 92 R.I. 292, 298, 168 A.2d 150, 154 (1961). Indeed, it is so patently unreasonable as to fall woefully short of the kind of reasonable interpretation of the term "served" necessary to render the pension statute ambiguous and subject to statutory construction.See Sutherland, Statutes and Statutory Construction § 46.04 (N. Singer 6th ed. 2000).
As such, the interpretation of the term "served," as advanced by Judge Yashar, is rejected by this Court. That term, as employed by the General Assembly in R.I. Gen. Laws § 8-8.2-6(a), is determined by this Court to mean plainly that a judge must be in the paid employment of the State as a judicial officer, for the time period specified in the statute, to gain the promised pension. *Page 46 
 2. The Plain Meaning of the Judicial Pension Statute Is Supported by Extrinsic Evidence
Moreover, even assuming, arguendo, that the word "served," as employed in the judicial pension statute, could be viewed as ambiguous, its plain meaning, as found by this Court, is supported by extrinsic evidence. This Court's interpretation of the disputed provision of the judicial pension statute is supported by: (1) the language of the judicial pension statute as a whole; (2) the provisions of the Rhode Island pension statute concerning contributory state employees (R.I. Gen. Laws § 36-9-25.1(b)); (3) section 8.13(d) of the Judicial Personnel Rules and Regulations recently adopted by the State Court Administrator, with the approval of the Supreme Court; and (4) the purpose and policy of the judicial pension statute. All of this authority, as well as additional precedent regarding judicial pensions inside and outside of this jurisdiction, confirms that the judicial pension statute should be construed as requiring a judge to be in the paid employment of the State as a judicial officer, for the time period specified in the statute, to gain the promised pension.
 a. The Language of the Judicial Pension Statute as aWhole
In interpreting any word of a statute that is found to be ambiguous, the Court should examine the word itself together with the language of the statute in its entirety. Berg, 913 A.2d at 371. Dictionary definitions of any term can provide insight into what the legislature intended when it employed that word. See Sutherland, supra, at § 46.02. The meaning of a word in a statute can become clear by reference to other words in the statute. Wigginton v. Centracchio, 787 A.2d 1151,1154 (R.I. 2001).
In construing a statute, the court must "presume that the General Assembly intended to attach significance to every word, sentence and provision of a statute." *Page 47 DiPrete, 845 A.2d at 279. "[I]t is not within the province of this court to insert in a statute words or language that does not appear therein, except in those cases where it is plainly evident from the statute itself that the legislature intended that the statute contain such provisions." New England Die Co., 92 R.I. at 298, 168 A.2d at 154.
Mindful of these precepts of statutory construction, this Court finds, as previously noted, that the term "served," as used in the judicial pension statute, has a plain meaning that is consistent with its dictionary definitions. This plain meaning is supported by a fair reading of the words of the statute as a whole. To read it otherwise, as Judge Yashar suggests, would fail to attach appropriate significance to all of the words used within the statute and would constitute an impermissible rewriting of its provisions.
The judicial pension statute declares that a judge "who hasserved for twenty (20) years and has reached the age of sixty five (65) years . . . may retire from "active service." R.I. Gen. Laws §8-8.2-6(a) (emphasis added). As such, the term "active," as used in conjunction with the term "served," suggests that a judge must have "served" actively for twenty (20) years — that is, that he or she must have served in paid employment as a judge for that period of time — to retire at age 65 with a full pension. It also explains why Judge Yashar returned from unpaid leave to "active service" for one day before retiring: the pension statute expressly requires a judge to retire from "active service." See id. By insisting that she be returned to active service for that one day before retirement, Judge Yashar thus acknowledges that she was not in active service during her unpaid leave of absence. See Def.'s Aff. at ¶ 20; see also App. to Def.'s Aff. at 19 (Settlement Memorandum); App. to Def.'s Aff. at 22 (Letter from Chief Judge *Page 48 
DeRobbio to Judge Yashar dated Sept. 26, 2005); App to Def.'s Aff. at 23 (Letter from Judge Yashar to Chief Judge DeRobbio dated Sept. 27, 2006).
In addition, section 8-8.2-1(d) of the Rhode Island General Laws states that "[e]ach judge and magistrate of the traffic tribunal shall devote full time to his or her judicial duties, except as may be otherwise provided by law." These duties include hearing and determining cases pursuant to R.I. Gen. Laws § 8-8.2-1(b). Although such directives are general, they imply a definition of "service" for a RITT judge which requires the performance of judicial duties for pay (or paid time off such as sick days or vacation time, as otherwise allowed by law).
In addition, as the State aptly notes, the disputed provision of the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), does not "award pension credits to a Judge merely from the date of his or her appointment through the date or his or her retirement," as Judge Yashar suggests, but limits it to time actually served. Pls.' Summ. J. Mem at 6. To interpret the statute, therefore, as granting a judge pension credit for twenty (20) years of state service, regardless of whether the judge "served" during that period of time in paid employment, would be to fail to attach significance to the word "served," as used by the legislature in crafting the judicial pension statute. SeeDiPrete, 845 A.2d at 279 (requiring the court to "presume that the General Assembly intended to attach significance to every word . . . of a statute"). In effect, it would constitute an impermissible rewriting of the judicial pension statute by this Court to insert the words "state service" in the statute in place of or in addition to the word "served," thereby lessening the prerequisites for receipt of a judicial pension, contrary to the intent of the General Assembly. See New England DieCo., 92 R.I. at 298, 168 A.2d at 154 (barring *Page 49 
court from inserting words into a statute unless necessary to effectuate legislative intent). This Court is satisfied that a proper construction of the judicial pension statute permits a judge to remain within the "state service" during an authorized unpaid leave of absence, without allowing the days spent on unpaid leave to count as time "served" as a paid employee of the judiciary for purposes of the accrual of pension benefits.
 b. The Language of Related State Statutes
In interpreting a statute, reference also may be made to statutes that relate to the same or similar subject matter; indeed, "statutes relating to the same subject matter [should] be construed together to be consistent and to effectuate the policy of the law." State v.Jordan, 528 A.2d 731, 734 (R.I. 1987). "[S]imilar statutes should be interpreted similarly." State v. DiCicco, 707 A.2d 251, 254 (R.I. 1998). "`[T]he court should attempt to harmonize each statute with the other so as to be consistent with their general objective scope.'" ThetaProperties v. Ronci Realty Co., Inc., 814 A.2d 907, 914 (R.I. 2003) (quoting Kaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)).
In this case, reference to provisions of the state pension statutes governing contributory state employees, R.I. Gen. Laws §§ 36-9-25.1(b) and 36-9-28, supports this Court's view of the plain meaning of the disputed provision of the judicial pension statute. It suggests that an unpaid leave of absence does not count as pensionable service.
Section 36-9-28 of the Rhode Island General Laws, entitled "Service creditable on retirement," provides, as follows:
 At retirement, the total service credited a member shall consist of the service rendered by him or her as an employee during his or her membership. *Page 50 
It dictates that state employees who are contributory members of the retirement system are given credit, for pension purposes, for the "service" they rendered as employees.
Like the judicial pension statute, however, this statute does not explicitly define "service" for pension purposes. Yet there is no reason that the plain meaning of the term "service" would not be the same as that attributed by this Court to the term "served" in the judicial pension statute — namely, time spent in the paid employment of the State. Indeed, it is hard to see how "service rendered . . . as an employee" could be defined any other way. R.I. Gen. Laws §36-9-28.[35] As such, an unpaid leave of absence would not count as pensionable service.
This reading of both the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), and the retirement statute for contributory state employees, R.I. Gen. Laws § 36-9-28, is confirmed by resort to another provision of the retirement statute for contributory state employees. Section 36-9-25.1(b) of the Rhode Island General Laws, entitled "Leave service credits," provides, in pertinent part, as follows:
 [a]ny state employee who is granted a leave of absence without pay for illness, injury, or any other reason may receive credit therefore by making contributions to the retirement system in an amount equal to the contribution he or she would have made to the retirement system based upon his or her expected compensation but for the granting of leave without pay, plus regular interest compounded annually to date of payment; provided the employee returns to state service for at least one year upon completion of leave. Credit for leaves of absence shall be limited in the aggregate during the total service of an employee to a period of four (4) years. *Page 51 
R.I. Gen. Laws § 36-9-25.1(b) (emphasis added). This statutory provision allows a contributory state employee to buy service credit toward his or her pension for the period of time that the employee is on unpaid leave, as long as the employee returns to state service for a year upon returning from leave and meets the other statutory criterion. Without this statutory safeguard, the employee would not receive pension service credit for the unpaid leave of absence.
Although it is undisputed that this statutory provision is not applicable to contributory or non-contributory judges,[36] that does not make it irrelevant for purposes of construing the disputed provision of the judicial pension statute. It suggests that a leave of absence without pay for illness, injury or any other reason does not count as pensionable service under Rhode Island law; otherwise, there would be no need for a statutory savings provision to allow a contributory state employee to buy service credits for the duration of his or her leave of absence. Moreover, the wording of this statute, which conditions the receipt of service credit on the state employee's "return to state service," implies that the state employee was not in active state service during the unpaid leave of absence.
This provision of the retirement statute governing contributory state employees thus stands as persuasive evidence that time "served" for purposes of calculating a pension benefit under the judicial retirement statute, R.I. Gen. Laws § 8-8.2-6(a), does not include an unpaid leave of absence. It is illogical to suggest that the legislature would employ the terms "served" or "service" in the retirement statutes applicable to judges and state employees and yet ascribe different meanings to those terms depending on whether *Page 52 
it was a judge or another state employee who performed the service in the employ of the State.
It is true that the General Assembly could have chosen to enact a similar savings provision for judges to allow non-contributory judges service credit for an unpaid leave of absence or to allow contributory judges the opportunity to purchase service credits for such a leave. Yet the absence of a savings provision in the judicial retirement statute does not suggest, as Judge Yashar submits, that the legislature intended only to deny contributory state employees, but not judges, pension credit for an unpaid leave of absence. Indeed, it suggests, to the contrary, that the General Assembly intended to deny judgesand other state employees pension credit for an unpaid leave of absence, subject to any other statutory provision that might provide otherwise.
 c. Section 8.13(d) of the Judicial Personnel Rules andRegulations
"[Administrative] regulations are prima facie evidence of the statute's proper construction [which the agency is charged with administering and] will be considered controlling by this [C]ourt unless the interpretation is clearly erroneous or unauthorized." RiceMachinery, Inc. v. Norberg, 120 R.I. 542, 550, 391 A.2d 66, 71 (R.I. 1978). "Where . . . the [implementing] regulation tracks in precisely the same direction as the language of the governing statute itself and is consistent with the most natural reading thereof," great deference should be granted the interpretation promulgated by regulation.Della Valle v. U.S. Dept. of Agriculture, 619 F. Supp. 1297, 1301
(D.R.I. 1985).
When an agency informally interprets its enabling statute, as opposed to enacting implementing regulations, however, that interpretation is entitled to deference only if it shows "thoroughness in consideration, validity in its reasoning, consistency, and `all *Page 53 
those factors which give the power to persuade.'" Bank of New York v.Hoyt, 617 F. Supp. 1304, 1313 (D.R.I. 1985) (quoting in partSkidmore v. Swift Co., 323 U.S. 134, 140 (1944)). "The deference due [, however,] is far from blind allegiance," Citizens Savings Bank v.Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985), and "[p]articularly in the relatively unstructured realm of informal interpretive rulings, the statute remains the sole criterion of what the law allows and what it forbids." Id. at 1341. "[W]hen an agency construes its own enabling act, it is subject to increased scrutiny." In re Advisory Opinion to theGovernor, 732 A.2d 55, 60 (R.I. 1999).
Mindful of these precepts of statutory interpretation, this Court will examine the administrative interpretations of the judicial pension statute at issue, as reflected in the recent implementing regulations adopted by the State Court Administrator as well as the earlier informal statements the he may have made regarding the calculation of Judge Yashar's pension. Most persuasive in this regard is section 8.13(d) of the recently adopted Judicial Personnel Rules and Regulations, as it supports the plain meaning of the judicial pension statute as found by this Court. Admittedly, rules, like statutes, are presumed to have prospective application only. See Ducally v. State, 809 A.2d 472 (R.I. 2002). Yet while the adoption of section 8.13(d) occurred after Judge Yashar retired and this litigation commenced, and hence it cannot be applied retroactively to control her pension calculation as a matter of law, it is nonetheless relevant, as an administrative regulation adopted by the state official charged with the administration of the courts, to any construction of that statute.
The Judicial Personnel Rules and Regulations were adopted by the State Court Administrator and signed, with approval, by the Chief Justice and all other members of *Page 54 
the Supreme Court on January 8, 2007, filed with the Office of the Secretary of State the following day, and made effective, prospectively, as of January 29, 2007. The filing form accompanying the regulations indicates that they were filed pursuant to R.I. Gen. Laws § 8-15-4(d) — the enabling statute that empowers the State Court Administrator, with the written approval of the Chief Justice, to adopt regulations relating to the administration of the courts that shall conform, where practicable, to existing policies governing personnel practices within the executive branch.[37] *Page 55 
Section 8.13(d) of the Judicial Personnel Rules and Regulations contains a straightforward directive regarding the impact of an unpaid leave of absence on the accrual of pension benefits for judges. This regulation, entitled "Leave without pay," unequivocally states, as follows:
 Whenever a judicial officer shall be granted a leave of absence without pay, such absence shall not be credited towards active service time for the purposes of retirement.
Judicial Personnel Rules and Regulations, § 8.13(d) (eff. Jan. 29, 2007) (emphasis added).
Section 8.13(d) thus reflects the State Court Administrator's interpretation of the judicial pension statute, R.I. Gen. Laws §8-8.2-6(a), as endorsed by not only the Chief Justice but all members of the Rhode Island Supreme Court, that a judge's unpaid leave of absence does not count as pensionable service. It denies judges either service credit (in the case of non-contributory judicial officers) or the opportunity to purchase service credit (in the case of contributory judges) for any leave of absence without pay.
In interpreting the disputed provision of the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), great deference should be afforded the State Court Administrator's interpretation of that statute, as reflected in section 8.13(d) of the regulations, because that regulation tracks the plain meaning of the term "served" in the enabling statute itself and is consistent with its most sensible reading. DellaValle, 619 F. Supp. at 1301. It is fair to use the new regulation retroactively to interpret the judicial pension statute, just as *Page 56 
an amendment to a statute can be used retroactively to explain the intent of the original statute, because it seeks only to clarify existing law. See, e.g., Green v. General Dynamics Corp., 245 Conn. 66,78 (Conn. 1998); Nelson v. Bd. of Educ. of Twp. of Old Bridge,689 A.2d 1342, 1349 (N.J. 1997) ("an amendment to a statute is given retroactive effect if it is designed merely to carry out or explain the intent of the original statute.").[38]
If the judicial pension statute instead were to be construed as Judge Yashar suggests — by reading it as allowing her unpaid leave of absence to count as pensionable service — it then would stand in contradiction to the regulations promulgated by the State Court Administrator and approved by the Supreme Court. Such a reading would be tantamount to a declaration by this Court that section 8.13(d) of the regulations is invalid; after all, regulations of an administrative agency cannot alter or contradict the agency's enabling statute or the provisions of state law that they are designed to implement. See generally, In re AdvisoryOpinion to the Governor, 732 A.2d 55, 69 (R.I. 1999); Parkway TowersAssocs. v. Godfrey, 688 A.2d 1289, 1293 (R.I. 1997).
It is true, as Judge Yashar suggests, that the State Court Administrator's interpretation of the disputed provision of the judicial pension statute, as reflected in section 8.13(d) of the Judicial Personnel Rules and Regulations, arguably contradicts his earlier informal statements — or those of his office — regarding that statute. On September 22, 2005, the Assistant Administrator of Employee Relations, David R. Heden, sent Judge *Page 57 
Yashar a letter regarding the "Calculation of Retirement Benefits," which stated, as follows:
 Pursuant to your request, this office has determined your retirement benefits as of December 30, 2005, to be $120,310 annually, based on your entry date of 07-10-1985, and your reaching the age of sixty-five (65) years, pursuant to R.I.G.L. Section 8-8.2-6(a).
App. to Def.'s Aff. at 21 (Letter from David R. Heden to Judge Yashar dated Sept. 22, 2005).[39] In a letter to Attorney General Patrick C. Lynch, dated over six months later, the State Court Administrator, J. Joseph Baxter, Jr., explained the computation of Judge Yashar's pension, as follows:
 Unlike other state employees, judges remain in `state service' from the time of their engagement (and are at any time subject to recall unlike other state employees) until one of five things happen — death, retirement, incapacity, or suspension or removal by the Commission on Judicial Tenure and Discipline. As a result, absent of any of these events happening, a judge is entitled to receive pension benefits based on age and length of service only.
(Letter dated Mar. 31, 2006 from Joseph J. Baxter, Jr. to Attorney General Patrick C. Lynch) (emphasis added). Viewing these letters in a light most favorable to Judge Yashar, the State Court Administrator took the position in the fall of 2005, and again in March of 2006, that the judicial pension statute allowed for her pension benefits to be *Page 58 
calculated based on her age and length of service only; according to Judge Yashar, this meant, implicitly, that the statute allowed those benefits to continue to accrue during her unpaid leave of absence. Judge Yashar argues that the new regulation, which contradicts the State Court Administrator's earlier statements, may be the law today but that the absence of a regulation at the time means that her leave without pay counts toward service credit for her pension during the time of her leave. Def.'s Supp. Summ. J. Mem. at 2.[40]
This Court finds, however, that section 8.13(d) of the Judicial Personnel Rules and Regulations, as adopted by the State Court Administrator, is far more persuasive authority for interpreting the judicial pension statute than either of these earlier, more informal pronouncements. In neither the September 22, 2005 letter from David R. Heden to Judge Yashar nor the March 31, 2006 letter to the Attorney General from J. Joseph Baxter, Jr. is there any indication that the State Court Administrator considered the meaning of the term "served," as it appears in the judicial pension statute, or considered whether an unpaid leave of absence could count as time "served," as defined by the statute. Judge Yashar did not ask that specific question of David R. Heden or J. Joseph Baxter, Jr. nor did they answer it. These letters suggest, instead, that the State Court Administrator and his office viewed its job with respect to calculating Judge Yashar's pension at that time as purely ministerial — the act of simply forwarding her start date, end date and rate of compensation at retirement to the appropriate authorities. *Page 59 
These informal pronouncements of the State Court Administrator or his office thus in no way reflect the kind of "thoroughness in consideration" of the language of the judicial pension statute, "validity in reasoning" or "consistency" with the later more formal interpretation of the statute by him in section 8.13(d) that are necessary to afford them deference in construing that statute. Bank ofNew York v. Hoyt, 617 F. Supp. at 1313. This Court will not pay them "blind allegiance," for it is the statute itself, as read plainly and sensibly by this Court, that "remains the sole criterion of what the law allows and what it forbids." Id. at 1314.
 d. An Absurd Construction of the Statute
In interpreting an ambiguous statute, the Court must examine the nature and object of its provisions. Berg, 913 A.2d at 371. Ultimately, the meaning of a statute is to be gleaned from a fair reading of the statute as a whole, mindful of its overall policy and purpose.Rubino v. Rubino, 765 A.2d 1222, 1225 (R.I. 2001). Courts never should construe a statute in a manner that would reach an absurd result.Town of North Kingstown v. Albert, 767 A.2d 659, 662 (R.I. 2001).
Judge Yashar suggests that this Court should construe the disputed provision of the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), to allow a judge to count as pensionable service any time that he or she spends on an unpaid leave of absence. That construction, however, would fly in the face of the essential purpose of the statute: to compensate the judge, upon retirement, for extended judicial service in the paid employment of the State. The purpose of the statute is not, as she would have this Court believe, to pay judges, in the form of pensions, for time not spent in paid judicial employment. In this regard, an unpaid leave of absence is to be distinguished from paid *Page 60 
medical leave, sick time, or vacation time — which are considered paid benefits of employment. See generally, R.I. Pub. Telecomm. Auth. v.Russell, 914 A.2d 984 (R.I. 2007) (court found that "[v]acation and sick leave benefits . . . provide continued payment of an employee's regular salary for periods the employee is authorized to be out of work");see also Cole v. Davol, Inc., 679 A.2d 875, 878 (R.I. 1996) (citingRobidoux v. Uniroyal. Inc., 116 R.I. 594, 598, 359 A.2d 45, 48 (1976) (court stated that "[v]acation pay is an incident of employment. Like sick leave, it is a benefit typically provided under an employment agreement, and it is a benefit that an employee acquires over time as a result of continued employment with the same employer.").
An unpaid leave of absence is not paid for because it is not a benefit of a judge's employ. To compensate a judge, therefore, for time not spent in paid employment would be tantamount to converting the pension, to that extent, from a benefit of employment to a gift. A pension, however, is not a gratuity of the State. See In re Almeida,611 A.2d 1375, 1385 (R.I. 1992) ("[a]lthough the pension plan in the present case is noncontributory, we decline to categorize it as a gratuity of the state"); see also R.I. Gen. Laws §§ 36-10.1-1 et seq., "Rhode Island Public Employee Pension Revocation and Reduction Act" (eff. Jan. 1, 1993).[41]
To accept Judge Yashar's interpretation of the judicial pension statute could allow a judge who remains in state service to enjoy a leave of absence without pay for up to the full twenty (20) years necessary to retire at age 65 with a full pension, assuming a return to active service for at least one day prior to retirement, and still collect a pension equal *Page 61 
to 100% of the salary that the judge would have earned if he or she had actually served the State during that time period. See Pls.' Reply Summ. J. Mem. at 4. Such a construction could result in a windfall for judges at the expense of taxpayers-allowing judges to secure a full pension in exchange for time in state service (that even spanned years) during which they neither worked as judges nor received pay. This Court will not construe the judicial pension statute in a manner that could lead to such an absurd result. Bucki v. Hawkins, 2007 R.I. LEXIS 18, 16 (R.I. 2007) (citing State v. Menard, 888 A.2d 57, 60 (R.I. 2005));see also Vail v. Employees Retirement System of the State ofHawaii, 856 P.2d 1227, 1238 (Haw. 1993) (refusing to give a judge full-time service credit during his entire appointment as a per diem judge because it would "result in a substantial windfall" to the judge, whereby, in theory, "10 years of [credited service] would be awarded even if only one day of [actual compensated] service per month was rendered, [for] a total of [only] 120 days [of actual service to the employer over the entire ten year period]").[42]
 3. No Disputed Issue of Fact as to Her Leave
Perhaps mindful that a plain and sensible reading of the disputed provision of the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), would not entitle her to service credit for an unpaid leave of absence, Judge Yashar next tries to suggest that the nature of her leave of absence creates a genuine issue of material fact that precludes this Court *Page 62 
from applying the statute as a matter of law to grant the State's motion for partial summary judgment. As both parties concede that a judge's authorized and paid medical leave would count as time "served" for purposes of accrual of pension benefits under the statute, she attempts to re-characterize her unpaid leave of absence as a paid medical leave for which she voluntarily relinquished her pay. Pls.' Summ. J. Mem. at 3; Def.'s Summ. J. Mem at 13.
This Court finds, however, based on the evidence presented — even when viewed in a light most favorable to her — that Judge Yashar has failed to create a genuine issue of material fact as to the nature of her leave. She requested a "temporary medical leave" without pay and was granted a "leave without pay." App. to Def.'s Aff. at 1, 2 (Letter from Attorney John D. Lynch to Chief Judge DeRobbio dated Feb. 7, 2005; Letter from Chief Judge DeRobbio to Attorney John D. Lynch, dated Feb. 10, 2005). Her leave request was processed as a leave without pay. App. to Def.'s Aff. at 3 (Letter from Joseph P. Ippolito to J. Joseph Baxter, Jr. dated Feb. 10, 2005). In correspondence that followed, Judge Yashar acknowledged, through her counsel, that she was on a leave without pay (albeit voluntarily). App. to Def.'s Aff. at 4 (Letter from Attorney John D. Lynch to Chief Judge DeRobbio dated May 11, 2005); App. to Def.'s Aff. at 6 (Letter from Attorney John D. Lynch to Chief Judge DeRobbio dated May 13, 2005).
Moreover, she made judicial admissions in the mandamus action which confirm that she requested and received an unpaid leave of absence. Her counsel stated: "[s]he's not looking for . . . money for the time she was out of work and had requested to be out of work." Tr. of Mandamus Hr'g at 15-16. "Her counsel further represented that she had "requested that she be placed on leave without pay status from her duties due to medical *Page 63 
reasons, and pursuant to her request, Defendant granted said request and allowed her to remain out of work without pay." Pl.'s Mem. for Issuance of Writ (Aug. 1, 2005).
Finally, in her letter of resignation, Judge Yashar states that she is "waiving any claim [she] may have for pay during that time beginningwhen [she] requested a `leave without pay status' up to June 1, 2005 when [she] presented [her]self at the Traffic Tribunal in order to return to work." App. to Def.'s Aff. at 23 (Letter from Judge Yashar to Chief Judge DeRobbio dated Sept. 27, 2005) (emphasis added). "[She] also waive[s] and renounce[s] any right, claim or entitlement to back pay or pay of any nature from June 1, 2005 up to September 26, 2005 or the date [she] was returned to active status." Id. Chief Judge DeRobbio acknowledged Judge Yashar's resignation and "voluntary waiver of any claim for back pay, [and] any claim for the period of time when you were given `leave without pay.'" App. to Def.'s Aff. at 24 (Letter from Chief Judge DeRobbio to Judge Yashar dated Sept. 27, 2005).
In light of this evidence, Judge Yashar's claim that she requested and received a paid medical leave (for which she voluntarily relinquished compensation) is untenable. She did not request paid leave, medical or otherwise, and she certainly did not receive it. Regardless of whether she voluntarily relinquished her pay, she was on an unpaid leave of absence. Her attempt to suggest otherwise is now barred, not only by the documentary evidence that she submitted to this Court with her affidavit, but by her prior judicial admissions to the contrary in the mandamus action. See Gross v. Glazier, 495 A.2d 672, 675 (R.I. 1985) ("Judicial estoppel precludes a party from taking a position inconsistent with the position previously taken . . . in an earlier law suit."). *Page 64 
Furthermore, Judge Yashar's assertion that she was in "service" because she continued to receive her medical benefits while she was on unpaid leave is of no moment. As previously stated, she continued to be employed by the State during her leave of absence and thus arguably would have been entitled to receive these benefits; however, she was not in active service and thus did not accrue pension service credit because she was neither paid nor performing service for the State during her leave.
This Court finds, therefore, that Judge Yashar is not entitled to receive service credit for the months that she was on an unpaid leave of absence, from February 1, 2005 through June 1, 2005. From June 1, 2005 until September 26, 2005, when she returned to active service for one day before retiring, she neither worked as a RITT judge (with the possible exception of the week or so that she tried to work in early June 2005) nor did she receive pay. Indeed, she waived any claim to pay or back pay for that period in her letter of resignation to Chief Judge DeRobbio. App. to Def.'s Aff. at 23 (Letter from Judge Yashar to Chief Judge DeRobbio dated Sept. 27, 2005). At the time she retired on September 27, 2005, at age 65, therefore, Judge Yashar had not "served" twenty (20) years as a judge, as required by the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), to garner a 100% pension. Having served as a judge for over 19 years at that time, she thus is entitled, under R.I. Gen. Laws § 8-8.2-6(a), to 75% of her pre-retirement salary — unless she can prove that the State is barred as a matter of contract law or by the principles of equitable estoppel from enforcing the clear dictates of the judicial pension statute against her. *Page 65 
 D. No Entitlement to Full Pension under Precepts of ContractLaw or Estoppel
Judge Yashar submits that, even if this Court were to determine that the judicial pension statute precludes crediting an unpaid leave of absence as "service" for purposes of calculating her pension (thereby declaring that she is not entitled, by statute, to a 100% pension), she nonetheless has a right, under precepts of contract law and equitable estoppel, to a full pension. Def.'s Summ. J. Mem at 29, 32. Judge Yashar argues that the letter she received from David R. Heden, dated September 22, 2005, constituted a determination by the State Court Administrator that she was entitled to a pension equal to 100% of her pre-retirement salary under the judicial pension statute, R.I. § 8-8.2-6(a). Def.'s Summ. J. Mem. at 27, 30, 32. She claims that this promise to her of a full pension formed a part of her settlement agreement with the Commission and Judge DeRobbio concerning her pending disciplinary charges and mandamus action. Id. at 32. To that extent, she claims that the amount of her pension is not subject to review because her pension was a material part of the alleged settlement agreement, and all parties have performed their obligations under that agreement. Id. at 31.
Judge Yashar asserts further that she relied on this promise, to her detriment, in fulfilling the other terms of the alleged settlement agreement: admitting to certain disciplinary charges and accepting a public censure, dismissing her appeal in the mandamus action, waiving certain claims to pay and retirement benefits, and retiring.Id. at 30. As such, she argues that she is entitled to enforce the alleged promise and receive her current pension, even if she is not entitled to a full pension under state law, under the doctrine of equitable estoppel. *Page 66 
In response, the State disputes that the State Court Administrator determined that Judge Yashar was entitled to credit for her unpaid leave of absence in calculating her pension under the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a). Pls.' Reply Mem. at 11-13. The State further disputes her claim that any such determination constituted a promise to her of a full pension or that it formed a part of her alleged settlement agreement. Id. The State argues that, even if the State Court Administrator made such a pension determination as part of the alleged settlement agreement, it cannot bind the State because it is contrary to the judicial pension statute at issue. Id. Furthermore, the State submits that the application of estoppel in this instance would violate the doctrine of separation of powers, because "[Judge Yashar] asserts that an employee of the judicial branch altered a statute for her and her alone and that now this Court must use additional judicial power to uphold the re-drafting of that statute." Pls.' Summ. J. Mem. at 17.
For purposes of summary judgment, this Court will view the evidence in a light most favorable to Judge Yashar, and again assume, without deciding, that the State Court Administrator interpreted the judicial pension statute as allowing her to count her unpaid leave of absence as pensionable service and thus promised her a full pension upon retirement. This Court will assume further that this promise was a term of the alleged settlement agreement.[43] This Court finds, however, as a matter of law, that any promise to pay Judge Yashar a pension, which is in excess of the 75% pension to which this Court has determined she is entitled under the judicial pension statute, R.I. Gen. Laws §8-8.2-6(a), is unenforceable. *Page 67 
It is well-settled in this jurisdiction that a contract provision that violates the law is not enforceable. See State v. Rhode Island Allianceof Social Services Employees, Local 580, 747 A.2d 465 (R.I. 2000). "If a statute contains or provides for nondelegable and/or nonmodifiable duties, rights, and/or obligations, then neither contractual provisions nor purported past practices . . . that would alter those mandates are enforceable." Id. at 469; see also Vose v. R.I. Brotherhood ofCorrectional Officers, 587 A.2d 913 (R.I. 1991) (holding that a contract provision that violates state law is unenforceable).[44]
To the extent, therefore, that the State Court Administrator promised Judge Yashar a pension equal to 100% of her pre-retirement salary as part of her alleged settlement agreement, she cannot rely on that provision of the agreement to claim a full pension here because it contravenes state law. Accordingly, this Court holds that Judge Yashar cannot rely on contract law to claim a full pension, as that would violate the clear dictates of the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a). This Court must next address whether a similar result should obtain under principles of equitable estoppel.
Under the doctrine of equitable estoppel, "a party may be precluded from enforcing an otherwise legally enforceable right because of previous actions of that party." Ret. Bd. of the Employees Ret. Sys. v.DiPrete, 845 A.2d 270, 284 (R.I. 2004). The elements of estoppel are: *Page 68 
 first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury.
Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (R.I. 1953). The burden of proving estoppel rests with the party raising estoppel as a claim or defense. Id.
Under Rhode Island law, the State and its governmental subdivisions may be estopped in limited instances "when appropriate circumstances, justice and right so require." Schiavulli v. School Comm. of the Town ofNorth Providence, 114 R.I. 443, 448-449, 334 A.2d 416, 419 (R.I. 1975);see also Ferrelli v. Dep't of Employment Sec., 106 R.I. 588, 592,261 A.2d 906, 909 (R.I. 1970) (estoppel may apply in proper cases where great injustice or loss would result); Greenwich Bay Yacht Basin Assoc.v. Brown, 537 A.2d 988, 991 (R.I. 1988) (collecting case law where Rhode Island courts have upheld the doctrine against acts of administrative and municipal authorities). Yet before the courts will entertain a claim of estoppel against the government, the claimant first must prove that the agent acted in compliance with state law. Romano v. Ret. Bd. of theEmployees' Ret. Sys., 767 A.2d 35, 38, 43 (R.I. 2001).[45]
Rhode Island case law firmly *Page 69 
establishes that the government is not bound by "alleged representations . . . [that are] in conflict with applicable law."Id. at 38.[46]
A pension case that closely parallels the case at bar is illustrative. In Romano v. Retirement Bd. of the Employees' Retirement Sys.,767 A.2d 35, 38 (R.I. 2001), plaintiff Romano sought to estop the government from requiring him to alter the terms of his fulltime municipal employment following his retirement from state service or risk suspension of his state retirement benefits, arguing that, in retiring from state service, he relied to his detriment on the advice of government employees who assured him that his subsequent municipal employment would not affect his state pension rights.[47] The applicable state statute, R.I. Gen. Laws § 36-10-36, however, required that state pension payments be suspended "whenever any state retiree is reemployed by a municipality within the state for more than seventy-five working days per calendar year." Id. at 38. (citations omitted.) Relying on that statute, the Rhode Island Supreme Court ultimately rejected Romano's defense of equitable estoppel against the government, holding that "where there is a clear statutory mandate, [an administrative agency] must comply with [it] . . . and no governmental official can in fact waive that mandate."Id. In so ruling, *Page 70 Romano limited application of the doctrine of equitable estoppel against the government to those situations where it could be applied "without doing violence to any state statutory mandate. . . ."Id. at 42 (citing Schiavulli, 114 R.I. at 444-451, 334 A.2d at 417-420;Greenwich Bay Yacht Basin Associates, 537 A.2d at 989-993). It thus stands for the proposition that, even when a state employee detrimentally relies upon a state official's representations regarding the employee's pension rights — for example, by retiring — equitable estoppel will not protect that employee if the representations that he or she relied upon were made in contravention of state law.
Rhode Island stands in accord with a number of jurisdictions which generally bar estoppel claims against the government where parties claim detrimental reliance on an erroneous interpretation or application of the law rather than a representation of fact. See, e.g., Heckler v.Community Health Services, Inc., 467 U.S. 51, 63 (1984); Fredericks v.Commissioner, 126 F.3d 433, 444 (3d Cir. 1997); Emery Mining Corp. v.Secretary of Labor, 744 F.2d 1411, 1416 (10th Cir. 1984); Palermo LandCo. v. Planning Com. of Calcasieu Parish, 561 So. 2d 482, 488 (La. 1990); Finnegan v. Public School Employees' Retirement Bd.,560 A.2d 848, 850 (Pa.Commw.Ct. 1989) (quoting Ervin v. City ofPittsburgh, 14 A.2d 297 (Pa. 1940) ("the government cannot be subject to the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts that require legislative or executive action.")).[48] The United *Page 71 
States Supreme Court has made clear that "[t]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law." Heckler v. Community HealthServices, Inc., 467 U.S. at 63. "Application of the [estoppel] doctrine is justified only where it does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation." Emery Mining Corp. v. Secretary of Labor,744 F.2d at 1416. As stated so eloquently by the Seventh Circuit, "[w]e do not believe the estoppel doctrine should be used against the government where the estoppel claimant's detriment is the loss of a windfall that could have never been statutorily effectuated through the process the claimant attempted to use." Kennedy v. United States, 965 F.2d 413,418-419 (7th Cir. 1992).
There are compelling policy reasons for precluding claims of equitable estoppel against the government for actions of public officials which contravene statutory law. Fundamentally, the act of estopping the government from enforcing the proper application of the law violates the doctrine of separation of powers. Id. at 420.[49] "The argument is that to permit equitable estoppel against the government effectively allows government employees to `legislate' by misinterpreting or ignoring applicable statutes, and subsequent judicial validation of such unauthorized `legislation' then infringes upon [the legislature's] exclusive authority to make law." Id. (citations omitted.) To give effect to this type of action would impede the essential functions of the government. Id.; *Page 72 Middletown Township Policemen's Benevolent Assoc. Local No. 124 v.Middletown, 744 A.2d 649, 652 (N. J. 2000).
In addition, estoppel should not be used to allow for the disbursement of public funds in contravention of state law. See Romano,767 A.2d at 38, n. 3 (expressing disapproval over the payout of illegal public retirement funds); see also Kramarevcky v. Dep't of Social and HealthServices, 863 P.2d 535, 538 (Wa. 1993) ("courts should be most reluctant to find the government equitably estopped when public revenues are involved"); Technology Investors, 689 A.2d at 1062 (in finding that "a municipality may not enact an ordinance that is inconsistent with a state statute" the court noted that "[t]he significant policy that undergirds this rule cannot be set aside by estoppel"). As the United States Supreme Court has made clear, it is for the legislature to decide how public funds are spent: "to assure that public funds will be spent according to the letter of the difficult judgments reached by [the legislature] as to the common good, and not according to the individual favor of Government agents or the individual pleas of litigants."Office of Personnel Management v. Richmond, 496 U.S. 414, 428 (1990).
"To protect the resources essential to maintain government for all the people, it may be necessary in some instances to deny compensation to individuals harmed by government misconduct." Falcone v. Pierce,864 F.2d 226, 229 (1st Cir. 1988). "It is generally better for an individual to suffer from governmental mistakes rather than to allow the institution of rules and practice which might eventually result in fraud to the public." In re Schwartz, 165 A.D. 2d 147, 149-150
(N.Y.App.Div. 1991).
In the case at bar, this Court has determined already that, to the extent the State Court Administrator promised Judge Yashar a full pension upon retirement, that decision *Page 73 
violates the judicial pension statute, R.I. Gen. Laws § 8-8.2-6(a), because it improperly included in her pension calculation the time she spent on her unpaid leave of absence. Judge Yashar claims, however, that she is nonetheless entitled to rely on the State Court Administrator's calculation of her pension benefits. She argues that her situation stands in contrast to the facts of Romano, as she exhausted all efforts to reach an answer to her pension inquiry and received not merely a form letter stating a general proposition of law regarding her pension, but a letter specifically quantifying her pension. See Romano, 767 A.2d at 36; App. to Def.'s Aff. at 21 (Letter from David R. Heden to Judge Yashar dated Sept. 22, 2005). Judge Yashar alleges that "[b]ut for the representations made to [her] concerning her eligibility for a full pension, she would not have submitted her request for retirement, and would have fulfilled any obligations and time of service necessary to complete 20 years of service." Answer at ¶ 40.
Regrettably for Judge Yashar, however, she cannot prove that any such decision of the State Court Administrator in calculating her pension was in compliance with state law. As such, she cannot prove her claim of equitable estoppel against the State. The facts underlying her claim of equitable estoppel, no matter how sympathetic, cannot sway the bright line rule emphasized by our Supreme Court in Romano: the State cannot be estopped by the actions of an agent acting in contravention of state law, even where there are compelling facts to demonstrate detrimental reliance.[50] *Page 74 
Although Judge Yashar may claim harm from the promises of government, her interest must give way to the greater good. This Court cannot countenance an award of pension benefits that unlawfully favors one at the expense of all. Were this Court to sanction that result, it would be tantamount to allowing a Rhode Island state official to legislate a judge's pension benefits, with the approval of the Court, in violation of the bedrock constitutional precept of separation of powers that delegates that power exclusively to the General Assembly. Accordingly, this Court holds that Judge Yashar cannot secure a full pension under the doctrine of equitable estoppel, as that would violate the clear dictates of the judicial pension statute, R.I. Gen. Laws §8-8.2-6(a).[51] *Page 75 
 Conclusion
For the reasons set forth in this Decision, this Court grants the State's motion for partial summary judgment and denies Judge Yashar's cross motion for summary judgment. This Court finds that the State of Rhode Island, by and through the Attorney General, and the General Treasurer, in his capacity as Chairman of the Employees' Retirement System of Rhode Island, both have standing, as plaintiffs, to bring this action. In addition, it finds that it has jurisdiction over their claims for declaratory and equitable relief. This Court declares that, under the judicial pension statute at issue here, R.I. Gen. Laws § 8-8.2-6(a), Judge Yashar is entitled to a pension equal to 75% of her salary upon retirement and not to the pension equal to 100% of her pre-retirement salary that she is currently receiving. It orders, accordingly, that her pension payments be reduced forthwith to comport with this declaration. This Court rejects Judge Yashar's defenses *Page 76 
and claims for affirmative relief based on contract law and equitable estoppel. Judgment shall enter for the State as to its claim for declaratory relief; its claim for equitable relief, in the form of restitution, remains pending. Judgment shall enter against Judge Yashar as to all counts of her counterclaim.
All counsel of record are directed to confer and to submit to this Court forthwith for entry an agreed upon form of order and judgment that conforms to this Decision.
[1] The named plaintiffs in this action include the State of Rhode Island, by and through its Attorney General, Patrick C. Lynch, and the Employees' Retirement System of Rhode Island ("ERSRI"), by and through its Chairman, Paul J. Tavares. Mr. Tavares was Chairman of the ERSRI by virtue of his position, at the time of the filing of this action, as General Treasurer of the State of Rhode Island. Although the newly elected General Treasurer of the State of Rhode Island, Frank J. Caprio, has not been substituted formally as a party plaintiff in his capacity as Chairman of the ERSRI, this Court will treat plaintiffs' complaint as if that substitution had occurred. This Court will use the terms "State of Rhode Island" and "the State" in this Decision to refer to the plaintiffs collectively.
[2] The question of restitution, if any, due and owing from Judge Yashar to the State for excessive pension payments received to date is one of equity that is not presently before this Court, as the State has not moved for summary judgment as to that claim for relief in its amended complaint. That question is thus reserved for a later day.
[3] The facts relevant to the pending motions, which appear to be largely undisputed for purposes of these motions, are culled mostly from the affidavit of Judge Yashar and the exhibits to that affidavit that she submitted in support of her summary judgment motion and in opposition to the motion for partial summary judgment filed by the State. These facts are viewed, as they must be by this Court, in a light most favorable to the party opposing summary judgment. SeeSteinberg v. State, 427 A.2d 338, 340 (R.I. 1981).
[4] See R.I. Gen. Laws § 31-43-1 (1956), as amended by P.L. 1985, ch. 458, § 1 (eff. June 28, 1985).
[5] See R.I. Gen. Laws § 31-43-1 (1956), as amended by P.L. 1992, ch. 453, § 1 (eff. Sept. 1, 1992), repealed by P.L. 1999, ch. 218, art. 1, § 1 (eff. July 1, 1999).
[6] See R.I. Gen. Laws § 8-8.2-1 (1956), as amended by P.L. 1999, ch. 218, art. 4, § 1(eff. July 1, 1999).
[7] It should be noted that Judge Yashar retained separate counsel for each of the legal proceedings referred to in this Decision. To defend her against charges filed by Chief Judge DeRobbio with the Commission on Judicial Tenure and Discipline, Judge Yashar retained John F. Dolan, Esq. and James S. D'Ambra, Esq. In her dealings with Chief Judge DeRobbio and others regarding her leave of absence and related issues from February 2005 through September 2005, Judge Yashar retained John D. Lynch, Esq. With respect to the petition for writ of mandamus that she filed in June 2005 in an effort to compel Chief Judge DeRobbio to allow her to work following her leave of absence, Judge Yashar retained Gregory A. Carrara, Esq. In the instant action, Judge Yashar retained Lauren E. Jones, Esq., together with Gregory A. Carrara, Esq., to represent her.
[8] Although Judge Yashar attached this letter as part of the appendix to her affidavit that she filed in this action, she did not attach as an exhibit the report from Dr. Frank W. Sullivan that was purportedly enclosed in that letter. Indeed, that report has not been provided by the parties to this Court. While that report is referenced as an enclosure in the February 7, 2005 letter from her counsel to Chief Judge DeRobbio, suggesting that the report was dated on or before February 7, 2005, it is referenced in Chief Judge DeRobbio's letter dated February 10, 2005 as being dated February 8, 2005 (which would have been after the date of her counsel's letter). App. to Def.'s Aff. at 1 (Letter from John D. Lynch, Esq. to Chief Judge DeRobbio dated Feb. 7, 2005); App. to Def.'s Aff. at 2 (Letter from Chief Judge DeRobbio to John D. Lynch, Esq. dated Feb. 10, 2005).
[9] The letter stated, in pertinent part, as follows:
 Enclosed find a report from Frank W. Sullivan, M.D., regarding Judge Marjorie R. Yashar of the Rhode Island Traffic Tribunal. Dr. Sullivan represents in part as follows, .. `I recommend she take a medical leave of absence from work for the next several weeks.' It would be appreciated if you would consider this request on her behalf.
 I have been authorized to represent to you that Marjorie R. Yashar expects that she will not receive her salary during her temporary medical leave. It is my understanding, however, that she would be entitled to all present medical insurance benefits as well as uninterrupted pension and pension benefits. It would be appreciated if you would consider this request at your earliest convenience so that I may properly advise my client.
App. to Def.'s Aff. at 1 (Letter from John D. Lynch, Esq. to Chief Judge DeRobbio dated Feb. 7, 2005).
[10] No copy of any communication between the Commission and Judge Yashar was attached to her affidavit or otherwise provided to this Court.
[11] This letter was copied to John F. Dolan, Esq., her counsel in the Commission proceedings; her physician, Dr. Frank W. Sullivan; J. Joseph Baxter, Jr., State Court Administrator; and Joseph P. Ippolito, District Court Administrator.
[12] This letter was copied to John F. Dolan, Esq., her counsel in the Commission proceedings; her physician, Dr. Frank W. Sullivan; J. Joseph Baxter, Jr., State Court Administrator; and Joseph P. Ippolito, District Court Administrator.
[13] This letter was copied to John F. Dolan, Esq., her counsel in the Commission proceedings, and her physician, Dr. Frank W. Sullivan. It was not copied to J. Joseph Baxter, Jr., State Court Administrator.
[14] This letter was copied to John F. Dolan, Esq., her counsel in the Commission proceedings; her physician, Dr. Frank W. Sullivan; J. Joseph Baxter, Jr., State Court Administrator; and Joseph P. Ippolito, District Court Administrator.
[15] This letter was copied to John F. Dolan, Esq., Judge Yashar's counsel in the Commission proceedings, and her physician, Dr. Frank W. Sullivan. It was not copied to the State Court Administrator, J. Joseph Baxter, Jr.
[16] This letter was copied to John F. Dolan, Esq., her counsel in the Commission proceedings; her physician, Dr. Frank W. Sullivan; J. Joseph Baxter, Jr., State Court Administrator; and Joseph P. Ippolito, District Court Administrator.
[17] This letter was sent by facsimile to John F. Dolan, Esq., her counsel in the Commission proceedings, and copied to the District Court Administrator, Joseph P. Ippolito; J. Joseph Baxter, Jr., State Court Administrator; Dr. Frank W. Sullivan; and Judge Yashar.
[18] This letter was copied to Joseph P. Ippolito, District Court Administrator, and J. Joseph Baxter, Jr., State Court Administrator.
[19] This letter was copied to John D. Lynch, Esq. and John F. Dolan, Esq., her counsel in her dealings with Chief Judge DeRobbio and the Commission, respectively.
[20] Judge Yashar copied no one on this letter.
[21] This letter was copied to Chief Judge DeRobbio and John F. Dolan, Esq., Judge Yashar's counsel in the Commission proceedings.
[22] This letter was copied to J. Joseph Baxter, Jr., State Court Administrator; Chief Judge DeRobbio; John F. Dolan, Esq., counsel to Judge Yashar in the Commission proceedings; and counsel to the General Treasurer.
[23] Since she was appointed as a judge prior to December 31, 1989, Judge Yashar was part of the non-contributory pension system that did not require her, at any time during her judicial tenure, to make contributions to a pension system. Def.'s Aff. at ¶ 3. An appropriations bill, approved on June 22, 1987 and made effective on July 1, 1987, created a mandatory retirement contribution system for state court judges and the state police. See R.I. Gen. Laws § 8-3-16 (1956), as amended by P.L. 1987, ch. 118, art. 15, § 1 (Justices of Supreme, Superior, and Family Courts); R.I. Gen. Laws § 8-8-10.1 (1956), as amended by P.L. 1987, ch. 118, art. 15, § 2 (District Court); R. I. Gen. Laws § 42-28-22.1 (1956), as amended by P.L. 1987, ch. 118, art. 15, § 3 (State Police); R.I. Gen. Laws § 28-30-18.1 (1956), as amended by P.L. 1987, ch. 118, art. 15, § 4 (Workers' Compensation Commission); and R.I. Gen. Laws § 31-43-11.1 (1956), as amended by P.L. 1987, ch. 118, art. 15, § 5 (Division for Administrative Adjudication). The following year, the state retirement board was given the authority to establish rules and regulations to govern these sections on retirement contributions. See R.I. Gen. Laws § 31-43-11.1 (1956), as amended by P.L. 1988, ch. 129, art 22, § 5 (eff. Jun. 2, 1988). Subsequent amendments pushed back the effective date of the retirement contribution amendments to July 1, 1989, and December 31, 1989, respectively.See R.I. Gen. Laws § 31-43-11.1 (1956), as amended by P.L. 1989, ch. 494, § 9 (eff. Jul. 10, 1989); R.I. Gen. Laws § 31-43-11.1 (1956), as amended by P.L. 1990, ch. 507, § 8 (eff. Jul. 12, 1990).
[24] The letter from Chief Judge DeRobbio to Judge Yashar simply states, as follows: "This letter will advise you that as of September 26, 2005 you are returned to active status as a Judge of the Traffic Tribunal." App. to Def.'s Aff. at 22 (Letter from Chief Judge DeRobbio to Judge Yashar dated Sep. 26, 2005).
[25] The record contains no transmittal letter from Chief Judge DeRobbio to J. Joseph Baxter, Jr. enclosing copies of his letter and hers, as referenced in this letter and the memorandum of settlement.
[26] That amended notice is not included in the record.
[27] The record contains neither the answer nor the petition filed with the Commission.
[28] The Attorney General's letter was not attached to Judge Yashar's affidavit or her summary judgment memorandum nor was it otherwise provided to this Court.
[29] The State filed an amended complaint on April 28, 2006, although there appears to be no substantive change in the amended version. However, in both versions, the State erroneously states that Judge Yashar retired from the AAC; in fact, she retired from the RITT, which replaced the AAC in 1999. See Compl. at ¶ 4; Def's Aff. at ¶ 2.
[30] The State seeks partial summary judgment, as it does not request judgment, as a matter of law, with regard to its claim for restitution.See Pls.' Summ. J. Mem.
[31] Even assuming, arguendo, that the plaintiffs lack standing to bring this action, this Court is nonetheless empowered to hear and decide their claims "because of the substantial public interest in having the matter resolved." R.I. Ophthalmologic Society v. Cannon,317 A.2d at 129 (quoting Sennott v. Hawksley, 103 R. I. 730, 241 A.2d 286
(1968)).
[32] It really cannot be disputed that the State Court Administrator is empowered to calculate judicial pensions. R.I. Gen. Laws § 8-15-4(a) (1956) directs that "[t]he Chief Justice shall appoint a court administrator . . . to aid in the administration of the judicial system." "It shall be the responsibility of the court administrator, under the direction of the chief justice, to act upon all administrative matters affecting the operation of the judiciary." R.I. Gen. Laws § 8-15-4(c), as amended by P.L. 2004, art. 45, § 1 (eff. Jul. 30, 2004). Furthermore, "the state court administrator is responsible for the computation of pay and fringe benefits for the active and retired judiciary in Rhode Island." Bulman v. Kane, 519 A.2d 1123, 1124 (R.I. 1987). In doing so, under R.I. Gen. Laws § 8-15-4(d) (1956), "[t]he court administrator, with the written approval of the chief justice, is authorized and empowered to adopt any rules and regulations that are deemed necessary to accomplish the purposes of this section." R.I. Gen. Laws § 8-15-4(d), as amended by P.L. 2004, art. 45, § 1 (eff. Jul. 30, 2004). No such rules and regulations were in effect at the time of Judge Yashar's retirement.
[33] This Court references the Superior Court proceeding Bulman v.Kane, C.A. No. NC85-0060 (R.I.Super.Ct.) (filed May 23, 1985), because the Supreme Court decision in Bulman v. Kane, 519 A.2d 1123 (R.I. 1987), makes no reference to the fact that the plaintiff initiated suit in the Superior Court as a declaratory judgment action.
[34] With respect to such certification, the Supreme Court has advised the trial court to address the difficult questions first, so that "[b]y making a ruling or decision, after the benefit of counsels' research and argument and then certifying a question to this Court, the trial justice . . . creates a thorough record, as well as provides this Court with the benefit of his or her reasoning and rationale in making our decision."In re Christopher S., 776 A.2d 1054, 1056 (R.I. 2001) (quotingPierce v. Pierce, 770 A.2d 867, 870 (R.I. 2001)). In another case, the Supreme Court declined to answer the certified question and remanded the case to Superior Court finding, "[i]n so doing, this Court, if necessary, will have the opportunity to review a complete record, including the learned trial justice's decision(s) on any of the issues that may be presented to the court for decision." Inman v. State EthicsComm'n, 776 A.2d 1061 (R.I. 2001) (Order).
[35] The chapter governing contributory state employees defines an "employee" as "any officer or employee of the state of Rhode Island whose business time is devoted exclusively to the services of the state, but shall not include one whose duties are of a casual or seasonal nature. . . ." R.I. Gen. Laws § 36-8-1(8). Similarly, the term "service" in this chapter is defined as "service as an employee of the state of Rhode Island as described in subdivision (8) of this section." R.I. Gen. Laws § 36-8-1 (17).
[36] See R.I. Gen. Laws § 36-9-5 (excluding judges from the provisions of Chapters 8, 9 and 10 of Title 36).
[37] These regulations are symbolic of the recent shift in power from the executive branch to the judicial branch. On July 30, 2004, the legislature passed Article 45 of the 2004-2005 Appropriations Bill, which expanded the judiciary's authority over its administrative affairs. P.L. 2004, Ch. 595, art. 45, §§ 1 et seq. Article 45 explicitly exempted state court judges from the governance of the personnel administrator within the Department of Administration and the unclassified pay plan board. See R.I. Gen. Laws § 36-4-2.1 (1956), as amended by P.L. 2004, Ch. 595, art. 45, § 4 ("The appointment, promotion, salaries, and tenure, and dismissal of employees of the legislative and judicial departments shall not be subject to control in any manner or degree by the personnel administrator, or by any other officer or board of the executive branch of government.") and R.I. Gen. Laws § 36-4-16.4 (1956), as amended by Ch. P.L. 2004, 595, art. 45, § 4 (exemption from unclassified pay plan board).
In particular, the amendments enlarged the scope of power granted to the state court administrator, by adding the following underlined sections:
 (a) The chief justice shall appoint a court administrator and such assistants as he or she deems necessary to aid in the administration of the judicial system. The administrator and his or her assistants shall serve at the pleasure of the chief justice.
 (b) The court administrator shall, under the direction of the chief justice, prepare an annual budget for the judicial system and submit the budget to the department of administration and perform all other necessary functions relating to the administration of the courts thereof.
 (c) It shall be the responsibility of the court administrator, under the direction of the chief justice, to act upon all administrative matters affecting the operation of the judiciary, including, but not limited to:
 (1) The preparation of the judicial payrolls;
 (2) The control of judicial appropriations for all state courts, except those as provided by law;
 (3) The procuring of office space, supplies, equipment, and professional and technical assistants for the judiciary; and
 (d) The court administrator, with the written approval of the chief justice, is authorized and empowered to adopt any rules and regulations that are deemed necessary to accomplish the purposes of this section, a copy of which rules and regulations shall be filed with the secretary of state and available for public inspection. In the formation of these rules and regulations, the judiciary shall take into consideration and conform to, where practicable, existing policies governing financial and personnel practices within the executive branch of government.
 (e) . . .
 (f) . . . .
R I. Gen. Laws § 8-15-4 (1956), as amended by P.L. 2004, ch. 595, art. 45, § 1 (emphasis added). R.I. Gen. Laws § 8-15-4 (d) (2004), and the Judicial Personnel Rules and Regulations (eff. Jan. 29, 2007) that were promulgated pursuant to it, were the result of an effort to enforce the separation of powers between the executive and judicial branches of our government. Significantly, the State Court Administrator was"authorized and empowered to adopt any rules and regulations that are deemed necessary." Id. The Judicial Personnel Rules and Regulations (eff. Jan. 29, 2007) were the first rules and regulations adopted by the State Court Administrator pursuant to this statute. As such, the question regarding Judge Yashar's pension arose during a regulatory void.
[38] Although R.I. Gen. Laws § 8-15-4(d) requires the Chief Justice to approve, in writing, any regulations adopted by the State Court Administrator, there is no statutory requirement that the Supreme Court itself approve the regulations. The fact that the Chief Justice, as well as all other members of the Supreme Court, approved the Judicial Personnel Rules and Regulations (eff. Jan. 29, 2007), including section 8.13(d), suggests that this Court should afford even greater weight to section 8.13(d) of the regulations in construing the disputed provision of the judicial pension statute.
[39] While the State Court Administrator, J. Joseph Baxter, Jr., did not author this letter, he was copied on it. App. to Def.'s Aff. at 21 (Letter from David R. Heden to Judge Yashar dated Sept. 22, 2005). In addition, the settlement memorandum dated September 20, 2005 anticipated that he would provide Judge Yashar with some kind of "confidential informational letter" as part of the settlement documents, suggesting that the letter from David R. Heden to Judge Yashar dated September 22, 2005 could have been that document. App. to Def.'s Aff. at 19-20. There is no evidence that the State Court Administrator objected to the content of David R. Heden's letter and, indeed, his letter to the Attorney General dated March 31, 2006 conforms to it. Ex. A to Def.'s Summ. J. Mem. (Letter dated Mar. 31, 2006 from Joseph J. Baxter, Jr. to Attorney General Patrick C. Lynch). The State Court Administrator presumably would have known as of this time that Judge Yashar had been granted an unpaid leave of absence by Chief Judge DeRobbio and that she was out on leave without pay. App. to Def.'s Aff. at 3 (Letter from District Court Administrator Joseph P. Ippolito to State Court Administrator J. Joseph Baxter, Jr. dated Feb. 10, 2005).
[40] In so arguing, Judge Yashar does not explain how the new regulation squares with her interpretation of the judicial pension statute. Indeed, she does not acknowledge that the new regulation has any value for statutory interpretation purposes. To accept her argument, this Court would have to conclude, in violation of the settled precepts of statutory construction and administrative law that it has previously discussed, that section 8.13(d) of the Judicial Personnel Rules and Regulations is irrelevant to statutory interpretation of the judicial pension statute and that it is unenforceable because it contradicts the provision of the judicial pension statute that it is designed to implement. See discussion, supra, at 52-56.
[41] This Act, which codified many of the common law precepts articulated in the Almeida case, states that retirement benefits for judges under Title 8 of the General Laws are "payments for service" and requires such service to have been "honorably rendered" as a condition of receipt of the pension benefit. R.I. Gen. Laws § 36-10.1-3
(c)(2)(i).
[42] In Vail v. Employees Retirement System of the State ofHawaii, 856 P.2d 1227 (Haw. 1993), the Hawaii Supreme Court upheld a ruling by the state retirement system that a per diem judge was not entitled to receive monthly service credit for months in which he worked part-time or fewer than ten days a month. According to the Court, the judge was not in "service," for purposes of accruing service credit, as defined by statute. "Service" is defined as "service as an employee paid by the State or county," as well as "service during the period of a leave of absence . . . if the individual is paid by the State or county during the period of the leave of absence." Id. at 1237. Therefore, in computing the judge's credited service, the state retirement system "[could] only include those days for which he was actually paid."Id. at 1238. The Hawaii Supreme Court would not support what it considered to be an "unjust and unreasonable result." Id.
[43] For summary judgment purposes, this Court will assume that a contract exits; therefore, this Court need not address the State's statute of frauds argument regarding contract formation.
[44] In Vose v. R.I. Brotherhood of Correctional Officers,587 A.2d 913 (R.I. 1991), the Supreme Court held that the Department of Corrections did not have the authority to bargain away the director's statutory powers to institute mandatory overtime in its collective bargaining agreements with the union workers. Rather than voiding the entire employment agreement, however, the Court simply held that "the agreement with respect to involuntary mandatory overtime is invalid because it is an improper attempt to contractually restrict the director's statutory powers. Id. at 916.
[45] Rhode Island case law discussing the issue of estoppel against the government sets forth the confusing rationale that an agent who possesses the authority to make representations exceeds his or her authority when the agent acts contrary to state law. SeeRomano, 767 A.2d at 43 (court held that even if employees possessed authority to make representations on behalf of agency, they had no authority to exempt a claimant from a statutory mandate). This Court finds this definition unnecessarily confusing, and instead, chooses to frame the rule as two separate tests: (1) whether the agent acted with actual authority; and (2) whether the agent acted in compliance with the law. In this case, there appears to be no issue under the first test, as the parties concede and this Court will assume, for summary judgment purposes, that the State Court Administrator had the authority to determine Judge Yashar's pension under the judicial pension statute. The issue, instead, is whether, under the second test, he acted in compliance with state law.
[46] See, e.g., State v. Rhode Island Alliance of Social ServicesEmployees, Local 580, SEIU, 747 A.2d 465, 469 (R.I. 2000);Technology Investors v. Town of Westerly, 689 A.2d 1060, 1062 (R.I. 1997).
[47] Romano, a state employee with 25 years of service, was offered a municipal position. Romano, 767 A.2d at 35, 36. In deciding whether to retire from the State and accept the municipal position, he sought assurances from the ERSRI that his retirement benefits would not be impacted by his decision to accept the offer of new employment.Id. He maintained that an ERSRI retirement counselor told him that she was unaware of any restrictions which would prevent him from working for a municipality while receiving state retirement benefits, but advised him to go to the Retirement Board to seek further advice. Id. Romano's potential employer allegedly contacted the ERSRI's Executive Director to seek clarification on his behalf. Id. The Executive Director sent a letter to the employer — without reference to Romano's situation — which stated in general terms that "there is no prohibition against a state retiree working for and belonging to a municipal system." Id. Romano claimed that the letter was a direct response to his situation.Id. He argued that he relied to his detriment on the representations made by both the Executive Director and the retirement counselor by retiring from the State and accepting the municipal position.Id. at 37.
[48] Many jurisdictions abide by the rule that in addition to the traditional elements of estoppel — whereby "the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment" — there must be a showing of "affirmative misconduct." United States v. Asmar, 827 F.2d 907, 912
(3rd Cir. 1987) (collecting caselaw from all circuits and stating that at least the First, Second, Third, Seventh, and Ninth Circuits have expressly adopted the affirmative misconduct test for estoppel against the government.). As there is no allegation in this case of affirmative misconduct on the part of the government and no argument that affirmative misconduct should be an additional element of a claim of estoppel against the government, this Court takes no position on whether the law of equitable estoppel in Rhode Island should be modified to require proof of affirmative misconduct in claims of estoppel against the government or whether such proof could allow estoppel to apply against the government even when it acts in violation of state law.
[49] However, the Court in Kennedy notes that this principle does not exempt the government from estoppel in every case, especially where government procurement is involved or affirmative misconduct is alleged.Kennedy, 965 F.2d at 420.
[50] It is true that the Supreme Court criticized the claimant inRomano for not seeking a more definitive answer to his pension inquiry:
 [H]is equitable posture in this case might have been enhanced if he had heeded the retirement counselor's advice and sought a ruling from the board itself after making some sort of a written submission requesting such relief, instead of merely relying upon the retirement counselor's off-the-cuff verbal opinion, one that also suggested he should go to the board to `stay out of trouble.'
Id. at 36. In the same breath, however, the Supreme Court observed that even a more formal request or response would not have allowed him to rely on representations concerning his pension benefits that were in violation of state law. Id. ("[i]n any event, the board itself would have been powerless to modify the clear provisions of controlling state law").
[51] Even, assuming, arguendo, that this Court were to conclude that Judge Yashar could avail herself of the defense of equitable estoppel by seeking to enforce an alleged pension promise made in violation of state law, she would be hard pressed to prove that she reasonably relied on this alleged promise to her detriment. Judge Yashar evidenced concern about the impact of her unpaid leave of absence on her pension rights from the time she took that leave until her retirement. Presumably that is why she wanted to characterize the leave as a medical leave of absence for which she voluntarily relinquished pay, why she wanted to return to paid status in May 2005, why she attempted to return to work in June 2005, why she litigated Chief Judge DeRobbio's refusal to return her to paid status, why she sought information about her pension rights from the State Court Administrator and the General Treasurer in June 2005, and why she engaged in settlement negotiations thereafter.
According to the evidence presented here, Judge Yashar never got a definitive response to her pension inquiries in the summer of 2005. The most the State Court Administrator told her was that he could only confirm her base entry date for state service. App. to Def.'s Aff. at 15. Even when she ostensibly sought assurances about the pension amounts that she would receive upon retirement as part of the proposed settlement agreement in the fall of 2005, she asked only for an "informational letter" and did not ask for a direct response to the question of how her leave of absence would be treated for pension accrual purposes under the judicial pension statute. Significantly, there is no evidence that the "informational letter" was ever incorporated into the formal settlement agreement. She apparently was content to rely on a letter, not even authored by the State Court Administrator, which did not answer that question and calculated her pension based only on her start and end dates of employment with the State. Perhaps she was fearful that an answer to that critical question would not be helpful to her.
While she could have sought a declaratory judgment herself to determine whether the judicial pension statute would allow her unpaid leave of absence to count as pensionable service, she did not avail herself of that time-honored judicial remedy to clarify her rights under the law. She likewise did not pursue her appeal of the Superior Court's denial of her mandamus petition which, if successful, arguably could have entitled her to back pay for time she was not allowed to work following her leave of absence and allowed her to return to work to serve any time she needed to reach the 20 years necessary to garner a full pension.
Perhaps she concluded, based on her extensive years of experience as a judge and attorney, as has this Court, that a fair reading of the judicial pension statute would not reward her with pension rights for time not spent in paid employment for the State. Knowing that disciplinary charges against her were on the horizon for hearing, and that she arguably risked more than what is at stake in this action if she failed to settle and those hearings went forward to decision, she may have concluded that she had no time to pursue these judicial remedies, that she may not have prevailed with such actions, and that an ill-defined letter calculating her pension rights at 100% based on her state service would be the best assurance of a full pension that she could receive under the circumstances. If no one challenged her pension, it would remain hers. At a minimum, it would give her a platform to argue later, as she does here, that she was entitled to a pension based on precepts of contract law and equitable estoppel.
In light of this alleged chain of events, however, it is hard to see how Judge Yashar, an intelligent and experienced jurist schooled in the law, can claim reasonable reliance on a layperson's alleged erroneous interpretation of the law. See generally, Technology Investors,689 A.2d 1060 (1997) (holding that a where a partnership had as its principal a person who was both an experienced lawyer and businessman, it could not have reasonably relied on a town ordinance that contravened state law).Id. She knew, or should have known, that although the State Court Administrator possessed the authority to calculate her pension, he is ultimately restricted by the terms of the judicial pension statute. She knew, or should have known, that the most sensible interpretation of the judicial pension statute would require her to have "served" 20 years in the paid employment of the State to secure a full pension and that an unpaid leave of absence should not be credited for pension purposes. She knew, or should have known, that under Romano, her full pension, at a minimum could be at risk. Romano, 767 A.2d at 39-40 (holding that "neither a government entity nor any of its representatives has any implied or actual authority to modify, waive, or ignore applicable state law that conflicts with its actions or representations"). Her defense of equitable estoppel, therefore, is one where the equitable balance appears not to tip in her favor.